Leslie A. LUDEKING, Appellant,

v.

Robert H. FINCH, Secretary of Health,
Education and Welfare, Appellee.

No. 19704.

United States Court of Appeals,
Eighth Circuit.

Jan. 29, 1970.

**500**

Thomas P. Helmey, Minneapolis, Minn., for appellant.

Stephen R. Felson, Atty., Dept. of Justice, Washington, D. C., for appellee; William D. Ruckelshaus, Asst. Atty. Gen., and Kathryn H. Baldwin, Atty., Dept. of Justice, Washington, D. C., and Robert G. Renner, U. S. Atty., Minneapolis, Minn., with him on the brief.

Before GIBSON, LAY and BRIGHT, Circuit Judges.

GIBSON, Circuit Judge.

The appellant, Leslie A. Ludeking became eligible to receive $123.00 per month in Social Security benefits on his 65th birth date (5–18–64), but the Secretary of Health, Education and Welfare suspended the benefit payments because Ludeking received Subchapter S dividends which the Secretary denominated as excessive wage earnings in an amount sufficient to offset the benefit payments. Appropriate administrative appeals were taken without success. Ludeking pursued his review rights under 42 U.S.C. § 405(a) in the District Court for the District of Minnesota. Judge Miles W. Lord, upon motion of both parties for summary judgment, affirmed the action of the Secretary and denied any relief to Ludeking in a well reasoned and analytical opinion (not reported). We affirm.

The primary question presented is whether the Secretary of Health, Education and Welfare had authority under the law to construe distributed Subchapter S dividends as wages for the purpose of computing excess earnings under 42 U.S.C. § 403 and thus to deduct such sum from monthly benefits otherwise due under 42 U.S.C. § 402, and if so, whether that authority was properly exercised in the present case. Ludeking's main contention is that the Secretary lacks legal authority to treat distributed Subchapter S dividends as wages.

Although Ludeking presents an appealing argument on the need and desirability of consistency in the treatment of the taxes and benefits under the Social Security Act, we think the applicable law and the Congressional intent in the enactment of that law supports the decision of the District Court.

The facts are not in dispute, and the factual findings of the Examiner for the Social Security Administration were not contested on review in the District Court. Ludeking, though regularly employed by the Red Owl Stores, Inc. in 1963, operated two sole proprietorships. In January of 1964 he transferred the assets of these businesses to one newly formed corporation, Ludeking Associates, Inc., in exchange for 300 shares of stock. He retained 240 shares and transferred the others to his wife and daughter. Ludeking became president and treasurer of the corporation, the other officers being his wife and daughter.

Immediately after incorporation the company and the shareholders elected to become a Small Business Corporation as permitted under Subchapter S of the Internal Revenue Code, 26 U.S.C. § 1371 et seq. The effect of this election was to avoid the duplication of taxes upon the corporate earnings and dividends paid to the shareholders. Under Subchapter S

the net profits of the corporation are taxable to the shareholder as dividends, the corporation being treated as a partnership for purposes of income tax.

Although Ludeking retired from the Red Owl Stores employment upon reaching his 65th birthday, he continued to operate and was directing head of his own corporate enterprise, spending approximately 30 to 35 hours a week, and never less than 45 hours per month in its operation. He devoted approximately the same amount of time in the corporate enterprise as he did to his prior two sole proprietorships.[1] Ludeking received no salary from the corporation. His only compensation came in the form of corporate dividends.

In 1964 the corporation had net taxable income of $12,089.62 of which $12,000.00 was distributed to shareholders as dividends, Ludeking receiving $8,400.00. In 1965 Ludeking again received $8,400.00 in dividends out of a corporate income of $13,540.57. The Examiner determined that Ludeking had not retired and was much more than a mere shareholder in the corporate enterprise, being rather the principal officer of the business, and that Ludeking's services were worth a minimum of $400.00 per month. The Examiner then held that $4,800.00 of the $8,400.00 received as Subchapter S dividends was in reality remuneration for services rendered and should be denominated as wages for the purpose of the Social Security Act, and that under 42 U.S.C. § 403(f) (5) (A) wages are considered earnings, which, if in excess of $1200.00 per year, reduce or eliminate

Social Security benefits during such years.

Ludeking's major contention on appeal, as it was in the District Court, is that all earnings of a Subchapter S corporation whether distributed or not are denominated as dividends under § 1373 of the Internal Revenue Code, 26 U.S.C. § 1373, and Internal Revenue Service Regs. § 1.1373–1–(d), that all income reported by Ludeking was in the form of dividends, and that the Secretary of Health, Education and Welfare had no authority under the law to classify or construe the Subchapter S dividends, or a portion thereof, as wages under 42 U.S.C. § 403 and § 409, so that the excess earnings as construed under the Social Security Act would be subtracted from receivable benefits, and thus he maintains that he was entitled to his full Social Security benefits.

Ludeking does not contest the finding that he was an employee of the corporation under 42 U.S.C. § 410(j), but strenuously urges that he did not receive any salary, and that his Subchapter S dividends distributions are beyond the reach of the Secretary of Health, Education and Welfare to deduct as wages from benefits receivable.

Dividends are specifically excluded as part of self-employment income under 42 U.S.C. § 411(a) (2) and thus cannot be considered as a self-employment income deduction from Social Security benefits.[2] There was no finding that the dividends constituted self-employment income, so there is no issue in this case on self-employment income. However, in the definition of wages, 42 U.S.C.

---

1. The Examiner found Ludeking's efforts expended on behalf of the corporate operation continued to the date of the Examiner's decision of June 30, 1967, and the Examiner in his decision decided that Ludeking was ineligible for benefits for the balance of 1964 and through 1965 because of the work deductions under 42 U.S.C. § 403(b).

2. § 411(a) (2) (Definitions relating to self-employment) in pertinent part reads:
   "There shall be excluded dividends on any share of stock . . . .."

Revenue Rule 59–221 C.B. 1959, p. 225 implements the above restriction and specifically states:

"Where a small business corporation elects under section 1372 of the Internal Revenue Code of 1954 not to be subject to Federal income tax, the amounts of its income which are required to be included in each shareholder's gross income do not constitute 'net earnings from self-employment' to such shareholder for Self-Employment Contributions Act purposes."

§ 409, dividends are not specifically excluded. The rather intricate § 409 defining wages, however, is not particularly helpful in this situation as it basically says "wages" means "remuneration paid * * * for employment".

Section 403(b) authorizes and directs the Secretary to deduct from any benefits payable under § 402(a) any excess earnings as defined in § 403(f) (3) which, for the period under consideration, would be earnings in excess of $1200.00 per year with certain qualifications not here pertinent; and earnings under § 403(f) (5) (A) (i) covers "wages for services rendered in such year and * * * net earnings from self-employment * * *."

■■ While there are no cases on the precise point here at issue, we think it is the intendment of the Social Security Act that the Secretary has authority to determine what constitutes wages under the Social Security Act, and that this authorization is essential to the Secretary in carrying out his duties under the Social Security Act, and in particular § 403 (b) and related sections. It would appear that he has the authority to consider substance over form and to evaluate the realities of a transaction, and unless there is some specific legal prohibition against his actions or an abuse of discretion, his decision should stand. The following cases are helpful in considering the Secretary's authority: Dondero v. Celebrezze, 312 F.2d 677 (2d Cir. 1963) held the Secretary had authority to reallocate income from the wife to the husband in a controlled corporation in considering excess earnings of the husband. Newman v. Celebrezze, 310 F.2d 780 (2d Cir. 1962) affirmed the Secretary's action in shifting corporate compensation in the form of salary from the son to the father in considering whether the father received excess earnings so as to preclude the payment of Social Security benefits.

More specifically some district courts have ruled that the Secretary has the power to denominate as wages dividends of a Subchapter S corporation where such dividends are received in lieu of salary. In Gant v. Celebrezze, No. C–124–G–62 (N.D.N.C. decided March 6, 1964), the Social Security claimant who was president of a newly incorporated Subchapter S corporation actively engaged in its operation and who received distributed corporate dividends but no salary, was considered to be an employee of the corporation receiving wages in excess of the permitted amounts, and Social Security benefits were disallowed.

In Somers v. Gardner, 254 F.Supp. 35, 36, 38 (E.D.Va.1966) the District Court held that undistributed net income of a Subchapter S corporation could not be reclassified as wages, but did approve reclassification of a distributed dividend as wages deductible from benefits, stating:

> "Admittedly, where dividends are *in fact* received by the sole stockholder who has performed services for his corporation, there may be authority for permitting the Secretary to reclassify the *de facto* dividends as salary to reflect appropriate compensation for such services.

> * * * * * *

> Thus the absence of a reclassification would permit the receipt in fact of income in return for services which income would not be applied against social security benefits."

■ Ludeking cites Gardner v. Hall, 366 F.2d 132 (10th Cir. 1966) which held the Secretary's finding that undistributed Subchapter S dividends constitute wages was not supported by substantial evidence. The Government there contended that the claimant received remuneration through his wife in the form of undistributed income and dividends, but the Examiner viewed the claimant as indirectly receiving income for his services in connection with the business because he had access to his wife's salary by way of their joint account. The court held there was no basis for re-allocating part of the wife's salary to the husband and on the other issue, concerning the treatment of Sub-

chapter S undistributed corporate dividends as wages, said at 135:

"We find no authority whatever which would empower the Secretary of Health, Education and Welfare to allocate a portion of the corporation's undistributed profit and income to Mr. Hall as remuneration for his services."

The undistributed corporate dividend of a Subchapter S corporation could only be viewed as constructive income at best. We agree with the Tenth Circuit reasoning in *Gardner* that undistributed corporate profits should not be construed as wages for the purposes of the Social Security Act. The *Gardner* case, however, does not control distributed Subchapter S corporate profits.

Ludeking claims that the Government's position would defeat the purpose of Subchapter S by reconstituting dividends into wages. It is true that Subchapter S enables persons with moderate incomes to choose the protection of a corporate structure without paying what some feel is a prohibitive double tax, but this policy is not affected by the result reached in this case. Subchapter S relates solely to taxation and the treatment of income from certain types of designated legal entities, and is not at all concerned with what constitutes income, wages or salary under the Social Security Act. Furthermore, Subchapter S legislation was enacted in 1958 independent of and subsequent to the Social Security Act of 1935.

The most difficult point raised by Ludeking is that the Government has not treated the distributed Subchapter S dividends as wages for the purpose of the taxing provision of the Social Security Act,[3] (which could in some cases affect benefits) but has treated this dividend as wages for the purpose of offsetting benefits otherwise receivable under the Social Security Act.

Ludeking points out that under the holding of Social Security Board v. Nierotko, 327 U.S. 358, 369, 66 S.Ct. 637, 90 L.Ed. 718 (1946) "wages" indicates receipts which were to govern taxes and benefits under the Social Security Act, and that the definition given "wages" under the taxing provisions should be consistent with the definition used under the qualification for benefits provision. This consistency appears to be not only fair but desirable.

The Hearing Examiner was in disagreement with the Internal Revenue ruling (*supra*, footnote 3), and, of course, the opinion of neither is controlling upon the court. However, it appears obvious that the Congressional purpose under the Social Security scheme of denying benefits to persons receiving self-employment wages or income in excess of a stated amount was to reduce the cost of the system[4] and to encourage retirement.[5] Of course, Congress did make an exception for the receipt of dividend income perhaps on the ground that persons receiving such income are not occupying a position in or competing in the labor market. And dividends are generally considered to be investment income rather than earned compensation. The narrow issue in this case, however, is whether a person who receives Subchapter S distributed dividend income, a part of which at least is in exchange for services rendered, is the recipient of wages. We believe the scheme and purpose of the benefit provisions of the Act require on the basis of fairness and equality of treatment that some of the distributed Subchapter S dividends might properly be considered by the Secretary to be wages.

We offer at this time no opinion on the question of whether a portion of such dividends should be considered wages under the taxing provisions of the Act, but hold that the Sec-

---

3. The Internal Revenue office, through its district director, notified Ludeking by letter of December 13, 1966, that he was not subject to Social Security taxes on the Subchapter S dividends.

4. S.Rep. No. 628, 74th Cong. 1st Sess. 10 (1935).

5. *See* W. Cohen, Retirement Policies under Social Security, 3, 69 (1957).

retary is empowered to denominate as wages such portion of distributed Subchapter S dividends as he finds reasonably constitute wages or salary; these determinations by the Secretary are legally permissible and in this case are supported by substantial evidence as required under 42 U.S.C. § 405(g). Poss v. Ribicoff, 289 F.2d 10 (2d Cir. 1961), cert. denied, 368 U.S. 902, 82 S.Ct. 178, 7 L.Ed.2d 96 (1961).

Judgment affirmed.