John A. NOTINI, and Winifred K. Notini, Plaintiffs,

v.

Margaret HECKLER, Secretary of Health and Human Services, Defendant.

Civ. A. No. 84–3205–Y.

United States District Court, D. Massachusetts.

Jan. 10, 1986.

George P. Jeffreys, Lowell, Mass., for plaintiffs.

Frederick E. Dashiell, Asst. U.S. Atty., for defendant.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

The plaintiffs, John Notini ("Notini") and Winifred Notini, brought this action to obtain judicial review of a final decision of the

Secretary of Health and Human Services (the "Secretary") denying them Social Security Retirement benefits for the years 1979, 1980, and 1981. The Secretary found that John Notini had "excess earnings" for these years. The Notinis argue that this decision is not supported by substantial evidence. As there are no disputed issues of material fact, both sides have moved for summary judgment. Fed.R.Civ.P. 56.

## I.

Albert H. Notini & Sons, Inc. (the "Company") was founded by Notini's grandfather. The Company deals in supplying tobacco and confectionary products to retailers. The business employs over 150 people. Notini, who is now 73 years old, has worked for the Company almost 60 years. Prior to 1979, Notini was the Company's chief executive officer, and under his guidance the Company prospered, reporting an average of $70 million in gross revenues during the years in question here. (Tr. 123) The Company has 650 shares of common stock outstanding. Notini owns 220 shares, while his brothers Arthur and Robert own 215 shares each. (Tr. 21) The three brothers comprise the Company's board of directors. (Tr. 21)

For most of his working life Notini has been an extremely hard working man. Prior to 1979, Notini regularly worked seven day weeks, averaging 70 to 80 hours per week. (Tr. 34) As chief executive officer and plurality stockholder, Notini managed and supervised virtually every aspect of the Company's business. Towards the end of 1976, as his health began to wane, Notini first contemplated retirement. Knowing that he would need to teach someone "the ropes" of the business, Notini hired Richard Flanagan as comptroller of the Company in January, 1977. (Tr. 23) By 1979, Notini apparently felt that Flanagan and his brothers were capable of running the Company, so he elected to retire.

On the advice of his doctors and family, Notini decided to ease the transition to retirement by working part-time. (Tr. 121)

Beginning in 1979, Notini worked no more than 12 hours a week, although he was sometimes at the business premises as much as 15 to 20 hours a week. (Tr. 37) He had no specific schedule, nor any specific duties. (Tr. 121) Almost all of the work he had previously done as chief executive officer was attended to by Mr. Flanagan or Arthur Notini. According to Notini, his activities while at work mostly involved opening the mail, socializing, running to the bank and occasionally talking to customers. In his words, he "puttered around." (Tr. 121) Although he attended two or three directors meetings a year, Notini did not render any significant managerial contribution to the Company, nor did he control the day to day decisions of the Company. (Tr. 121–123) For his efforts the Company paid Notini wages of $4,410 in 1979, $4,960 in 1980, and $5,500 in 1981. In May, 1982, the board voted Notini a $100,000 bonus. The corporate minutes and Notini's testimony indicate that the reason for the bonus was that 1981 had been a very good year for the Company. (Tr. 35, 97)

Notini first applied for Retirement Insurance benefits in November, 1976. In his application he stated that he had earned $163,000 during 1975. Beginning in February, 1977, the month Notini became eligible for benefits, suspensions were imposed on his and Winifred Notini's benefits because of his estimated earnings. Subsequently, benefit payments were made to Notini and his wife, effective January, 1979, based upon Notini's estimate that he would earn no more than $4,500 for that year. In May, 1982, the Secretary required Notini to file annual reports of earnings for the years 1979–1981 inclusive. In November, 1982, the Secretary notified Notini that the services he rendered the Company were worth more than the wages paid, and that his benefits for those years would be based on estimated earnings of $37,925.[1] (Tr. 129) Mr. Notini has exhausted all administrative remedies in attempting to appeal

---

1. The Secretary arrived at this figure by dividing Notini's 1978 income of $151,700 by 25%.

this finding of excess earnings. (Tr. 2, 4, 129) He thus brings this appeal in the district court pursuant to 42 U.S.C. § 405(g).

## II.

Section 203(b) of The Social Security Act, 42 U.S.C. § 403(b), empowers the Secretary to impose deductions against an individual's social security benefits under certain circumstances. Deductions are authorized "on the basis of such individual's wages and self-employment income ... if ... he is charged with excess earnings under the provisions of subsection (f)...." Subsection (f), as was applicable to the years 1979, 1980 and 1981, defined excess earnings as 50% of the amount in excess of $4,500, $5,000, and $5,500 respectively. In addition, subsection (f)(4) provides that an individual will be presumed "to have rendered services for [excess wages] ... until it is shown to the satisfaction of the Secretary that such individual did not render such services ... for more than such amount." 42 U.S.C. § 403(f)(4). The Secretary's regulations require an applicant to provide "convincing" evidence that he or she is entitled to receive payment of benefits. 20 CFR § 404.708.

## III.

The Social Security Act directs this Court to affirm the decision of the Secretary so long as it is supported by "substantial evidence." 42 U.S.C. § 405(g). However, even under this limited standard of review it is the duty of the Court to ensure that the Secretary has fairly characterized the evidence and exercised her discretion in accordance with the law. In this case, Notini argues that the Secretary's decision must be reversed. Viewing the record as a whole, the Court agrees, at least in part.

The Administrative Law Judge's reasoning is summarized in the following excerpt from his opinion:

[T]he claimant's part-time work activity in 1979, 1980 and 1981 was substantial and was of significant value to the corporation. Consequently, the value of the services the claimant rendered to the corporation during those years was not accurately reflected in the wages reportedly paid to the claimant for 1979, 1980 and 1981 ...

(Tr. 10) It is important to note that the Administrative Law Judge did not find that Notini's testimony was not credible, or that there was some hidden scheme to secretly funnel payments to Notini. As the quoted language makes clear, he simply found that Notini was underpaid. The question then is whether the statute authorizes deductions under these circumstances.

The Secretary argues that she has the power to "ignore the form of a business arrangement and consider the substance of the arrangement." *Weisenfeld v. Richardson*, 463 F.2d 670, 672 (3rd Cir.1972); *Ludeking v. Finch*, 421 F.2d 499, 502 (8th Cir.1970). True as that proposition may be, all the cases cited by the Secretary involve judicial review of the Secretary's decision to recharacterize or reallocate monies actually paid to a beneficiary or his family. None of these cases support the proposition that undistributed corporate profits may be redistributed by the Secretary. Instead, to the extent that there is a rule at all it appears to be that "where corporate profits remain undistributed and are not available 'at any time' for the personal use of the applicant, the Secretary has no authority to allocate any portion of the funds to the applicant." *Letz v. Weinberger*, 401 F.Supp. 598, 602 (D.Colo.1975). This Court need not go so far as to declare a blanket prohibition against reallocation of undistributed corporate earnings. In this case it is enough to note that there is insufficient evidence to warrant such a reallocation under any standard. The record discloses that no corporate distributions were made, in any form, during the entire period covered (through 1984). Thus, there was no plan to "hide" Notini's salary in dividends until after he turned age 70.[2] Likewise,

---

**2.** There is no excess earnings deduction for beneficiaries over age 70. Thus, Notini has been

the record does not suggest that the capitalized earnings of the company were unusually high during 1979–1981. Finally, there is no evidence that the value of Notini's stock was inordinately affected by his failure to draw a full salary. Therefore, the Court rules that the Secretary's decision to allocate undistributed profits to Notini on the grounds that he was "underpaid" was not in accordance with law and was an abuse of discretion.

 The Secretary next argues that the $100,000 bonus paid Notini in 1982 actually represents compensation for the years 1979–1981. As to 1979 and 1980, there is not substantial evidence to support this theory. The Secretary reads too much into the fact that Notini's salary was set at the maximum allowed by the statute. Absent a showing of fraud, "an applicant for retirement benefits may arrange his income for the avowed purpose of qualifying for such benefits." *Bryan v. Mathews*, 427 F.Supp. 1263, 1268 (D.D.C.1977) Notini has provided "convincing" evidence that he had no excess earnings in 1979 and 1980. The analysis for 1981 stands on a different footing, however. Although Notini has suggested that he was given the bonus because of his 50 years with the Company, the weight of the evidence, including testimony by Notini himself, indicates that the bonus was prompted by the Company's success in 1981. Significantly, the Company reported Notini's bonus as part of his 1981 salary on its corporate tax return. (Tr. 87) Moreover, the bonuses to Notini and his brothers were not granted in proportion to their stock holdings in the Company. Thus, substantial evidence supported characterization of any part of the $100,000 bonus as 1981 compensation. Although the Secretary reached her 1981 income figure along a slightly different path, the Court finds the differences insignificant and rules that there is substantial evidence to support the Secretary's finding of excess earnings in 1981.

entitled to full benefits (subject, the Court assumes, to the alleged overpayment) since January, 1983.

Accordingly, the Secretary's determination of excess earnings is REVERSED as to 1979 and 1980, and AFFIRMED as to 1981. The case is Remanded to the Secretary to calculate and pay Mr. and Mrs. Notini's benefits in accordance with this opinion.