Wolf TAUBENFELD, Plaintiff,

v.

Otis R. BOWEN, Secretary of the Department of Health and Human Services, Defendant.

No. 87–0120–CIV.

United States District Court, S.D. Florida.

April 13, 1988.

Lyle Lieberman, Miami, Fla., for plaintiff.

Wendy Jacobus, Asst. U.S. Atty., Miami, Fla., for defendant.

## ORDER DISAFFIRMING MAGISTRATE'S REPORT AND RECOMMENDATION

EDWARD B. DAVIS, District Judge.

THIS CAUSE came before the Court on the Report and Recommendation of United States Magistrate Lurana S. Snow, and Plaintiff's Objection thereto. The Magistrate recommends that the decision of the Secretary of the Department of Health and Human Services (hereinafter "Secretary") be affirmed.

The issue before this Court is whether the final decision of the Secretary, denying Plaintiff, WOLF TAUBENFELD ("TAU-

BENFELD"), Social Security retirement benefits, is supported by the evidence in the administrative record. The Secretary's findings must be accepted as conclusive if supported by "substantial evidence." *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Bloodsworth v. Heckler,* 703 F.2d 1233 (11th Cir. 1983). Substantial evidence is defined as such relevant evidence as a reasonable mind would accept as adequate to support a conclusion.[1] The Court must also consider whether the Secretary applied the correct legal standards in making the decision. *Wiggins v. Schweiker,* 679 F.2d 1387 (11th Cir.1982).

## BACKGROUND

TAUBENFELD was born on November 12, 1917. He was the president of Kontrol Men's Wear Corporation, Inc., a small, family-owned, closed corporation which operates a retail men's clothing store. TAUBENFELD asserts that he retired in April, 1984. At that time he resigned as president and operator of the business, and reduced his working hours from 200 hours per month to 72 hours per month, with a commensurate reduction in salary compensation. TAUBENFELD claims that his wife, Luisa Taubenfeld, and two sons, Abraham and Isaac, have taken over the bulk of his duties, at substantially increased wages, and now run the business.

In August, 1984, TAUBENFELD filed a claim for retirement insurance benefits with the Social Security Administration ("SSA"). On November 23, 1984, the SSA informed the Claimant that he was not entitled to payments because he was "still in a position to control all the business activities and inasmuch, control [his] own earnings." (TR. 95). This decision was reaffirmed upon TAUBENFELD's request for reconsideration. After a *de novo* hearing, an Administrative Law Judge also determined that TAUBENFELD was not "re-tired" within the meaning of the Social Security Act ("The Act"), 42 U.S.C. § 401 *et seq.*

TAUBENFELD requested review of this decision. The SSA Appeals Council granted review and amended the ALJ's decision to reflect that undistributed corporate earnings could be allocated to TAUBENFELD as excess wages. The Council found no eligibility for old-age benefits, reasoning that the Claimant had the ability to pay himself additional income based on his share of retained earnings[2] in Kontrol Men's Wear Corp. Furthermore, the Appeals Council found that TAUBENFELD was not retired because although his hours were reduced, the value of his services had not diminished. Specifically, the Appeals Council held as follows:

[T]he sole purpose for the claimant's presence at the business is to make important decisions and attract customers, both functions vital to the success of the business. The Council believes he retains authority to set his salary despite the fact that he is a minority owner, and his services continue to be worth more than $580 per month.... The corporate returns for 1983 and 1984 ... show retained earnings which are sufficient to pay the claimant for his services. Thus, the Council believes it was reasonable for the Administration and the Administrative Law Judge to determine that the claimant continues to earn at the same rate; i.e., at an amount sufficient to cause full suspension of old-age insurance benefits.

Appeals Council decision at 8.

Plaintiff appealed the Secretary's decision to this Court, asserting that he was legitimately "retired" and that the Secretary's allocation of retained corporate earnings as additional wages is an error of law. The Magistrate considered two issues: 1) whether the Secretary erred in finding no

---

1. The Court is barred from substituting its evaluation of the evidence for that of the Secretary, yet it may review the record to determine if substantial evidence exists to support the Secretary's findings. *Tieniber v. Heckler,* 720 F.2d 1251 (11th Cir.1983).

2. Based on an ownership interest of 24.5% for 1984, the Council found that TAUBENFELD *could have* appropriated for himself retained earnings of $15,740.51 and for 1985, when his ownership interest was 27%, an additional $16,928.19 which he did not report.

retirement where the Secretary failed to make proper credibility findings; and 2) whether substantial evidence supports the Secretary's conclusion that the Claimant was not entitled to retirement insurance benefits. Report at 15. With respect to the first point, the Magistrate found that the Secretary had stated in sufficient detail why it was rejecting the Claimant's testimony on credibility grounds. *See Owens v. Heckler*, 748 F.2d 1511 (11th Cir.1984); Appeals Council decision at 8 ("The foregoing evidence is inconsistent and therefore unreliable."). As to the second contention, the Magistrate found that because "the Administration has not acquiesced to any decision by a circuit court on the issue of allocation of undistributed corporate earnings," it was proper for the SSA to reallocate TAUBENFELD's income in the manner in which it did. Report at 17.

For the reasons stated below, the Court DISAFFIRMS the Magistrate and remands for further proceedings.

## DISCUSSION

The Court agrees that the Secretary "properly assesed the credibility of the plaintiff and witnesses, [and] considered the entire record." Report at 16. Nonetheless, the Secretary's determination that TAUBENFELD was not retired in the subject years is incorrect as a matter of law.[3]

Under sections 203(b) and (f) of the Act, 42 U.S.C. § 402(b) and (f), a beneficiary aged 65 and over could earn $6,960 in the 1984 taxable year without suffering a loss of retirement insurance benefits. *See* 48 F.R. 50414. (1983). Deductions are taken from benefits for any month the beneficiary engaged in self-employment or rendered services for wages in excess of $580. *Id.* The "Retirement Test Exempt Amounts" for the 1985 taxable year are $610 per month for $7,320 per year. *See* 49 F.R. 43775 (1984). 42 U.S.C. § 403(f)(4)(B) provides that an individual will be presumed, with respect to any month, to have rendered services for wages

of more than the applicable exempt amount until it is shown to the Secretary's satisfaction that excess wages were not so received. Wages are defined in 20 C.F.R. § 404.1041 to mean "remuneration *paid* to you as an employee for employment." (emphasis added) The name given to the remuneration and the method of payment are immaterial.

Because TAUBENFELD is an employee, not a self-employed person, the inquiry is focused on whether he received payment of wages in excess of $6,960 for 1984 and $7,320 for 1985. The receipt of wages may be actual or constructive. "Wages are constructively paid when they are credited to the account of, or set aside for, an employee so that they may be drawn upon by the employee at any time although not then actually received." 20 C.F.R. § 404.1042(b). TAUBENFELD presented evidence that he substantially curtailed his work activity from a yearly salary of some $32,000 to an annual salary of $6,960 after March 31, 1984, and a $7,320.00 salary in 1985.

■ Clearly, TAUBENFELD deliberately arranged his affairs to be eligible for retirement. This he could do so long as he was "legitimately retired" and the arrangement was bona fide. *See Pastore v. Bowen*, Case No. 86–0644–Civ–Davis (July 17, 1987) at 3 [available on WESTLAW, 1987 WL 47290], citing *Newman v. Schweiker*, Unempl.Ins.Rep. (CCH) ¶ 14,732 (N.D.Ill.1983); *Ludeking v. Finch*, 421 F.2d 499, 503 (8th Cir.1970); *Gardner v. Hall*, 366 F.2d 132 (10th Cir.1966). However, it appears that the Secretary found TAUBENFELD's arrangement to be a sham, for while he curtailed his work hours, reduced his salary, and resigned as president of the business, he "remained in control" and "had the ability to set his own salary". *See* Appeals Council decision at 8.

"The Secretary has, without question, the authority and the duty to pierce any fictitious arrangements among family members, and others, to shift salary payments from one to the other when the

---

**3.** It is irrelevant that the SSA has not "acquiesced" to any decision by a circuit court on the issue of whether undistributed corporate

profits can be considered wages to a claimant. That decisional law, this Court finds, controls the outcome of this case.

arrangement is not in accord with reality." *Gardner*, 366 F.2d at 135. Before the Secretary may treat a salary arrangement as a "sham" or "scheme of shifting wages", three factors must be considered: [4]

> (1) whether the claimant continues to contribute substantial and valuable services to the corporation; (2) whether the family member receiving the income increases his or her duties commensurate with the increase in salary; and (3) whether the family member's income is used to support the claimant.

*Heer v. Secretary of Health and Human Services*, 670 F.2d 653, 655 (6th Cir.1982); *Dondero v. Celebrezze*, 312 F.2d 677 (2d Cir.1963) (per curiam).

▋ Here, the Secretary determined that TAUBENFELD continued to contribute substantial services despite the reduced work hours. This is supported by substantial evidence. However, there is no finding that Ms. Taubenfeld or the two sons received wages not commensurate with their allegedly increased duties.[5] Should the Secretary have made such a finding, the monies allocated by the Secretary to TAUBENFELD would necessarily have had to consist of the sham payments to these family members, not undistributed corporate earnings. *See Rebak v. Matthews*, 438 F.Supp. 668, 673 (S.D.N.Y.1977) (where payments to claimant's wife did not reflect actual increase in her services to corporation, Secretary could pierce arrangement and combine salaries of wife with claimant's to deny retirement benefits).

As to the third factor, the record is devoid of any facts that TAUBENFELD is supported by a family member's increased income or by money shifted elsewhere. *See Garcia v. Heckler*, Unempl.Ins.Rep. (CCH) ¶ 16,100 (S.D.Fla.1985). The record does not make this a case of income shifting to another family member constituting an indirect payment to the Claimant. *Rit-*

*chey v. Heckler*, Unempl.Ins.Rep., ¶ 15,371 (S.D.Ohio 1983).

▋ There is also no evidence that the corporate form of Kontrol Men's Wear is a sham or other than bona fide. For example, there is no indication that TAUBENFELD intermingles his personal funds with corporate funds, or that he runs the business as a sole proprietorship. *See, e.g., Newman*, Unemp.Ins.Rep., ¶ 14,732. The Secretary's observation that TAUBENFELD could set his own salary and that the corporation's profits were available to TAUBENFELD at any time ignores the corporate existence. *See Goodkin v. Schweiker*, Unempl.Ins.Rep., ¶ 14,384 (W.D.Ark.1982).

Thus, one is left wondering under what authority the Secretary added to TAUBENFELD's reported wages the undistributed corporate profits. While this Court has been unable to locate an Eleventh Circuit decision addressing this issue, the published decisional law of other circuits is unanimous, and the result here inescapable. There is no legitimate basis for allocating the funds in question to TAUBENFELD, for "where corporate profits remain undistributed and are not available 'at any time' for the personal use of the applicant, the Secretary has no authority to allocate any portion of the funds to the applicant." *Notini v. Heckler*, 624 F.Supp. 552, 554 (D.Mass.1986), citing *Letz v. Weinberger*, 401 F.Supp. 598, 602 (D.Colo.1975). *See also Gardner*, 366 F.2d at 135; *Herbst v. Finch*, 473 F.2d 771 (2d Cir.1972); *Ludeking v. Finch*, 421 F.2d 499, 503 (8th Cir. 1970).

In the present case, there is no evidence that TAUBENFELD or any other person received, directly or indirectly, any of the corporate profits in question. The profits were not "credited to the account of, or set aside for" TAUBENFELD in such a manner that they could be drawn upon by him

---

**4.** To reallocate income on the basis of a fictitious salary arrangement, all three factors must be present. *Bryan v. Mathews*, 427 F.Supp. 1263, 1269 n. 15 (D.D.C.1977).

**5.** That Taubenfeld may have been performing services in excess of the stated salary does not

preclude the receipt of old-age insurance benefits, where there is no evidence that remuneration was being received by some other method. *Koeller v. Finch*, 315 F.Supp. 533, 542 (D.Kan. 1970).

at any time. *See Ritchey*, Unempl.Ins. Rep., ¶ 15,371. Again, "[t]reating undistributed profits as constructively received wages by reasoning that the majority stockholder had unrestricted access to corporate funds ignores the corporate existence". *Gonzalez v. Heckler*, Unempl.Ins. Rep., ¶ 16,097 (S.D.Fla.1985). Thus, the Secretary erred in attributing to TAUBENFELD those funds.

In accordance with the foregoing, it is ORDERED AND ADJUDGED that the Report and Recommendation issued by Magistrate Lurana Snow is DISAFFIRMED and this cause REMANDED to the Secretary for proceedings not inconsistent with this opinion.

The Clerk of the Court is directed to close this case.