# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———————

No. 96-3610

———————

John F. Johnson, Sr.;          *
Joann Johnson; Ella Johnson,   *
                               *
          Appellants.          *
                               * Appeal from the United
                               States
                               * District Court for the
   v.                          * Eastern District of
                               Missouri
                               *
Shirley S. Chater, Social      *
Security Administration,       *
                               *
          Appellee.            *

———————

Submitted: April 16, 1997

Filed: October 16, 1997

———————

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and
     BEAM, Circuit Judge.

———————

McMILLIAN, Circuit Judge.


     John F. Johnson, Sr., his wife, Joann Johnson, and their daughter, Ella Johnson (collectively claimants),

appeal from a final order entered in the District Court[1] for the

---

[1]The Honorable Lawrence O. Davis, United States Magistrate Judge for the Eastern District of Missouri.  The case was tried to a magistrate judge pursuant to the consent of the parties under 28 U.S.C. § 636(c).

Eastern District of Missouri granting summary judgment in favor of the Commissioner of Social Security. Johnson v. Chater, No. 1:95CV00075 LOD (E.D. Mo. July 29, 1996) (order and memorandum). For reversal, claimants argue (1) the Commissioner did not have the authority to reallocate undistributed corporate profits as wages to John Johnson, Sr., in 1991 for the purpose of computing excess earnings under 42 U.S.C. § 403 and (2) the Commissioner erred in "piercing the veil" of their family salary arrangements to reallocate some of the salary paid in 1990 from Joann Johnson to John Johnson, Sr., and to attribute self-employment profits to John Johnson, Sr. For the reasons discussed below, we affirm in part and reverse in part the order of the district court and remand the case to the district court for further proceedings.

The following statement of facts is taken in large part from the order and memorandum of the magistrate judge. John Johnson, Sr., filed an application for retirement insurance benefits and began receiving benefits in May 1989. His wife, Joann Johnson, filed an application for spouse's benefits, and their daughter, Ella Johnson, filed for child's benefits on the record of her father. In March 1993 the Social Security Administration (SSA) notified John Johnson, Sr., that he had received benefits greater than those to which he was entitled because of excess earnings. The excess earnings were wages and self-employment income attributable to him in 1990 and 1991 from two family farming corporations, Cowhill Farms, Inc., and J & J Hog Farms. John Johnson, Sr., was president of Cowhill Farms until January 1989, when he reduced his activities. In May 1989 he

3

officially retired from Cowhill Farms, and Joann Johnson became president upon her husband's retirement. John Johnson, Sr., also retired from J & J Hog Farms in January 1989. Their son, John Johnson, Jr., took on more of the management responsibility for the two family farming corporations.

For 1990 John Johnson, Sr., reported wages of $6,000 and Joann Johnson reported wages of $9,482 from Cowhill Farms. The SSA reallocated their wages and determined that John Johnson, Sr., had received $9,482 in wages and Joann Johnson had received $6,000 in wages from Cowhill Farms. The SSA also determined that John Johnson, Sr., was self-employed with respect to J & J Hog Farms and had received profits of $6,217 in 1990. For 1991 John Johnson, Sr., reported wages of $7,000 and Joann Johnson reported wages of $8,400 from Cowhill Farms. The SSA agreed that $8,400 was a reasonable salary for Joann Johnson, but decided that John Johnson, Sr.'s work was worth twice that of his wife, and thus determined that his salary was $16,800. The SSA noted that in 1991 Cowhill Farms had "ample" profits available to pay these wages and to invest in corporate assets. Record at 228 (Special Determination dated Feb. 27, 1993) (noting 1991 corporate profits were $11,102 and expenses were down $13,484 over 1990)). These amounts exceeded the exempt earnings amount for 1990 and 1991. The redeterminations were based on income and corporate tax returns, W-2 forms, self-employment questionnaires, interviews, and other information.

In June 1994 a hearing was held before an administrative law judge (ALJ). The ALJ found that the SSA had properly reallocated wages between John Johnson, Sr., and Joann Johnson for 1990 and 1991 and that John Johnson, Sr., had been overpaid retirement benefits in 1990 and 1991 in the amount of $5,488. (The ALJ also found that Ella Johnson had been overpaid benefits.) The ALJ found that John Johnson, Sr., had provided more than "minimal" services to the two corporations, including 25%

5

of the labor, such as spraying and combining, for Cowhill Farms.  The ALJ also found there had been considerable commingling of activities among family members, Joann Johnson's duties had not substantially increased in 1990 and 1991 to justify the significant increase in her salary after 1989, and John Johnson, Sr., had continued to exercise significant decision-making responsibility and had provided invaluable services to Cowhill Farms.

The ALJ's decision was affirmed by the Appeals Council. Claimants sought judicial review in federal district court. 42 U.S.C. § 405(g). The parties filed motions for summary judgment. The district court denied claimants' motion for summary judgment and granted summary judgment in favor of the Commissioner. This appeal followed. 28 U.S.C. § 1291; Fed. R. App. P. 4(a)(1).

We will uphold the final decision of the Commissioner if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). "Substantial evidence is that which a reasonable mind might accept as adequate to support the [Commissioner]'s conclusion." House v. Shalala, 34 F.3d 691, 694 (8th Cir. 1994).

Qualified applicants are entitled to retirement benefits. 42 U.S.C. § 402(a). However, an applicant who is eligible for social security benefits may not work or engage in self-employment which results in income in excess of a certain amount per year. Id. § 402(f). "Wages are defined to mean all employment remuneration, irrespective of the name by which the compensation is designated or the way in which it is paid." Martin v. Sullivan, 894 F.2d 1520, 1531 (11th Cir. 1990) (citing applicable Social Security regulations).

> An applicant for benefits must submit the evidence necessary to establish that all entitlement requirements are met, and failure to submit such evidence shall be the basis for the SSA to determine that the conditions for receipt of Social Security benefits have not been met. The claimant, therefore, has the burden of rebutting the presumption of excess earnings under the Act.

Id. at 1531-32 (citations omitted).

"[T]he [Commissioner] has the right to examine the substance over the form of business transactions and relationships for purposes of the Social Security Act." Heer v. Secretary of Health & Human Services, 670 F.2d 653, 655 (6th Cir. 1982) (per curiam). "Determination of an individual's earnings for Social Security purposes must

be related to the reality of his [or her] connection with the labor market and cannot be based on paper allocation of income." Martin v. Sullivan, 894 F.2d at 1524, citing Reconsideration Redetermination at 2. In particular, the Commissioner can "pierce the veil" of fictitious family salary arrangements "where a claimant's alleged retirement and consequent shifting of salary to a family member is for the purpose of receiving Social Security [retirement] benefits." Id. at 1532. The Commissioner should consider the following factors before "piercing the veil" of "fictitious family salary arrangements": "(1) whether the claimant continues to contribute substantial and valuable services to the corporation; (2) whether the family member receiving the income increases his or her duties commensurate with the increase in salary; and (3) whether the family member's income is used to support the claimant." Heer v. Secretary of Health & Human Services, 670 F.2d at 655; cf. Diamond v. Harris, 512 F. Supp. 216, 219 (W.D.N.Y. 1981) (holding Secretary cannot allocate half of wife's salary to claimant husband absent evidence that her salary was excessive or that she had not earned it or her salary increased in direct relation to decrease in his salary and cannot reclassify distributed Subchapter S dividends as salary absent evidence that dividends were paid as a result of his services).

UNDISTRIBUTED CORPORATE PROFITS

Claimants first argue the Commissioner does not have the authority to reallocate undistributed corporate profits as wages to John Johnson, Sr., for the purpose of computing excess earnings under 42 U.S.C. § 403, citing

9

Ludeking v. Finch, 421 F.2d 499 (8th Cir. 1970). Claimants also argue that, even assuming the Commissioner does have the authority to reallocate undistributed corporate profits, it was an abuse of discretion to do so because the undistributed corporate profits had been retained by the corporation for future capital improvements.

These arguments have not been preserved for appellate review. In the statement of facts in the memorandum in support of their motion for summary judgment in the

district court, claimants referred to the SSA's determination that Cowhill Farms had "ample profits" to pay John Johnson, Sr., a salary of $16,800 in 1991, mem. at 6, funds which John Johnson, Sr., had never received, id., and which Cowhill Farms had retained for "grading/leveling" corporate lands. Id. at 7. Claimants challenged, among other things, the determination that John Johnson, Sr.'s services were worth twice as much those of Joann Johnson and the failure to specify what those invaluable services were. Id. at 9 (¶ 5). Claimants did not challenge the reallocation of undistributed corporate profits in the district court review proceeding. However, we cannot affirm the decision of the Commissioner unless it is supported by substantial evidence. We have found nothing in this record which supports the Commissioner's decision to "reallocate" funds that have never in fact been distributed in any form by Cowhill Farms or received by claimants. For that reason, we reverse that part of the Commissioner's decision attributing to John Johnson, Sr., $16,800 in wages from Cowhill Farms in 1991, an increase of $9,800 over the $7,000 that he reported.

"The [Commissioner] has, without question, the authority and the duty to pierce any fictitious arrangements among family members, and others, to shift salary payments from one to the other when the arrangement is not in accord with reality." Gardner v. Hall, 366 F.2d 132, 135 (10th Cir. 1966) (citing cases shifting salary payments from one family member to another). This is what the Commissioner did with respect to the wages reported by the claimants for 1990. The Commissioner examined the wages reported by the claimants

11

in light of their respective corporate offices, experience, responsibilities, and hours worked, and reallocated their wages, reducing those reported by Joann Johnson by $3,482 and increasing those reported by John Johnson, Sr., by $3,482 (as well as $6,217 in self-employment income). For 1991, however, the Commissioner did not reallocate salary payments between John Johnson, Sr., and Joann Johnson, but instead reallocated undistributed profits from Cowhill Farms to John Johnson, Sr.

Reallocation often arises in cases involving Subchapter S corporations because, for income tax purposes, the net profits of Subchapter S corporations are taxable to the shareholder as dividends. The corporation is treated as a partnership. For social security purposes, dividends are excluded from "self-employment income," 42 U.S.C. § 411(a)(2), but are not specifically excluded from "wages." Id. § 409. For this reason, benefits claimants would often argue that all earnings of a Subchapter S corporation, whether or not denominated as dividends for income tax purposes, are not wages for social security purposes and that the SSA has no authority to classify or recharacterize Subchapter S dividends as wages. The courts rejected these arguments and distinguished between distributed and undistributed corporate dividends. For example, in Ludeking v. Finch, the claimant received no salary from the Subchapter S corporation but did receive $8,400 in the form of corporate dividends. The Secretary found that the claimant was much more than a mere shareholder, that he had not retired and was the principal officer of the corporation, and that his services were worth a minimum of $400 per month, or $4,800 per year. The Secretary determined that $4,800 of the $8,400 received as Subchapter S dividends was in reality remuneration for services rendered and should be denominated as wages for social security purposes. This court upheld the Secretary's authority to reclassify or denominate as wages such portion of distributed Subchapter S corporate dividends as found to reasonably constitute wages or salary for the purpose of determining whether a claimant had excess earnings. 421 F.2d at 502-04, citing Gant v. Celebrezze, No. C-124-G-62 (N.D.N.C. Mar. 6, 1964)

13

(claimant was president of newly incorporated Subchapter S corporation actively engaged in its operation and who received distributed corporate dividends but no salary and was considered to be employee of corporation receiving wages for social security purposes); accord Owens v. Sullivan, 790 F. Supp. 195, 197-98 (E.D. Ark. 1991) (holding claimants who received Subchapter S distributed dividend income, part of which was in exchange for services rendered, were recipients of wages for social security purposes).

The distinction between distributed and undistributed corporate profits is important. Although the distinction often arises in cases involving Subchapter S corporations, we think the distinction is not limited to Subchapter S corporations and instead reflects the broader distinction between actual and merely theoretical or constructive payments of corporate profits in any form, whether as salary, dividends or otherwise. For example, in Somers v. Gardner, 254 F. Supp. 35 (E.D. Va. 1966), the claimant was the president of a Subchapter S corporation, owned all of the outstanding stock, and exercised complete control over the corporation. He performed services for the Subchapter S corporation but did not in fact receive any income from the corporation in any form. The Secretary argued that the claimant had received constructive dividends for income tax purposes and that, for social security purposes, such constructive dividends could be reclassified as salary for services rendered. The district court rejected the Secretary's argument and held that the Secretary could not reclassify the undistributed net income of a Subchapter S corporation as wages but could reclassify distributed dividends as wages. Id. at 36-38. The district court carefully noted that

> where dividends are in fact received by the sole stockholder who had performed services for his corporation, there may be authority for permitting the Secretary to reclassify the de facto dividends as salary to reflect appropriate compensation for such services. Additionally, there is substantial authority for the general principle that the Secretary can allocate funds in fact paid out by a corporation in order to properly reflect the value of services rendered

15

by employees and to prevent fraudulent arrangements which are tantamount to "shifting wages." However, no case has been cited nor found by this Court which authorizes the Secretary to "reallocate" moneys which have never in fact been distributed in any form by the corporation involved.

Id. at 36-37 (citations omitted).

Similarly, in <u>Gardner v. Hall</u>, the Secretary contended that undistributed income and earnings had been "channeled" to the claimant.  The claimant, his wife and their sons operated a ranch first as a partnership and then as a Subchapter S corporation.  The claimant was in active charge of the ranch, and his wife was actively involved in the bookkeeping and related activities.  Each family member was a shareholder and corporate officer.  Each corporate officer, except the claimant, received a salary.  The claimant received no salary or other remuneration directly from the corporation for his services.  His wife deposited her salary into a joint checking account and some of the household expenses were paid from that account.  The Secretary argued that part of the salary paid to the wife should be reallocated to the claimant.  The court of appeals disagreed, holding that this was not a reallocation case because there was no evidence or finding that the wife's salary was excessive or not earned by her or that there was any shifting in the corporation of salary payments from the claimant to the wife.  366 F.2d at 135.  In addition, and more important to our analysis, the court of appeals held that the Secretary had no authority to allocate a portion of the corporation's undistributed profit and income to the claimant as remuneration for his services.  <u>Id.</u>; <u>accord Herbst v. Finch</u>, 473 F.2d 771, 774-76 (2d Cir. 1972) (holding it was improper to make excess earnings deduction where corporation did not actually or symbolically set aside funds to pay salary to claimant and neither he nor corporation contemplated payment); <u>Taubenfeld v. Bowen</u>, 685 F. Supp. 237, 240 (S.D. Fla. 1988) (holding Secretary cannot allocate retained corporate earnings as additional wages to claimant); <u>Letz</u>

17

v. Weinberger, 401 F. Supp. 598, 602 (D. Colo. 1975) (holding Secretary could not allocate to claimant corporate profits of Subchapter S corporation that had not been distributed and were not available for personal use of claimant, emphasizing that remuneration must be paid by the employer and received by the employee, either actually or constructively, before Secretary can reallocate or shift salary payments).

The present case is analogous to Notini v. Heckler, 624 F. Supp. 552 (D. Mass. 1986), in which the Secretary's theory was essentially that the claimant had been underpaid. In that case the claimant had been the chief executive officer and plurality

shareholder of a successful corporation.  In 1979 he worked part-time, about 12 hours per week, mostly, in his words, "puttering around," and later retired; he attended directors meetings several times a year but did not make significant managerial decisions or control daily management.  The corporation paid him wages of $4,410 in 1979, $4,960 in 1980 and $5,500 in 1981, and a bonus of $100,000 in 1982.  The Secretary determined that the claimant's services to the corporation were worth more than the wages paid and that his benefits for 1979-1981 would instead be based on estimated earnings of $37,925 (which represented 25% of his 1978 income of $151,700).  There was no evidence of any additional or "hidden" payments from the corporation to the claimant.  The district court upheld the Secretary's characterization of the $100,000 bonus as compensation for 1981, id. at 554, but held that the Secretary could not allocate undistributed corporate profits to the claimant on the grounds that he had been "underpaid."  Id.  The district court noted that no corporate distributions had been made, in any form, during the period in question and, thus, there was no plan to "hide" salary in dividends.  Id.  Nor was there any evidence that the capitalized earnings of the corporation had been unusually high during the relevant period or that the value of the claimant's stock had been inordinately affected by his failure to draw a full salary.  Id.

Here, the Commissioner did not seek to shift 1991 salary payments from Joann Johnson to John Johnson, Sr. Under the Commissioner's calculations, Joann Johnson's 1991 salary of $8,400 remains unchanged.  The Commissioner did not argue that Joann Johnson's salary was unreasonable or excessive or had not been earned by

19

her.    Rather, the Commissioner determined that John Johnson, Sr., was underpaid, that is, that his services were worth $16,800, or $9,800 more than he was paid in 1991.    Even though Cowhill Farms apparently had the corporate funds available to make such a payment, there is no evidence in this record that such funds (in excess of the reported $7,000) were actually paid or distributed to John Johnson, Sr.   We hold the Commissioner cannot, for social security purposes, allocate a portion of undistributed corporate profits to John Johnson, Sr., as remuneration for his services for social security purposes.

Whether or not the corporation is a Subchapter S corporation is irrelevant, and in fact the record indicates that Cowhill Farms is not a Subchapter S corporation (it filed Tax Form 1120 and not Tax Form 1120-S). The Commissioner does not argue that Cowhill Farms is not a bona fide corporation.

For this reason, we reverse that part of the district court order affirming the Commissioner's reallocation of $9,800 as wages to John Johnson, Sr., for 1991 and remand the case to the district court for further proceedings.

REALLOCATION OF FAMILY SALARIES

Claimants next argue the Commissioner erred in "piercing the veil" of their family salary arrangements to reallocate some of the salary paid in 1990 from Joann Johnson to John Johnson, Sr., and to attribute self-employment profits from J & J Hog Farms to John Johnson, Sr. Claimants argue that the circumstances did not justify "piercing the veil" of their family salary arrangements because John Johnson, Sr., did not contribute substantial and valuable services to Cowhill Farms or J & J Hog Farms in 1990 and that Joann Johnson had increased her corporate duties commensurate with her increased salary in 1990. Claimants specifically argue that the ALJ failed to identify the "invaluable services" provided by John Johnson, Sr., and improperly discounted Joann Johnson's farming skills and contributions to Cowhill Farms. We disagree.

21

We hold that the Commissioner did not err in piercing the veil of the family salary arrangements.  Substantial evidence in the record as a whole supports the findings that John Johnson, Sr., provided substantial and valuable services to Cowhill Farms and J & J Hog Farms in 1990 and that Joann Johnson had not increased her corporate duties commensurate with her increased salary in 1990.  The burden of proof was on the claimants.  The record showed that the operations of the two corporations were the same as they were in 1989 when it was determined in another social security

proceeding that John Johnson, Sr., had provided valuable services to Cowhill Farms; there were no written agreements or corporate minutes showing the manner in which the two corporations were operated; there was considerable evidence of commingling of activities among the Johnsons and their son; and there was evidence that John Johnson, Sr., had provided at least 25% of the field work and other "invaluable" services to the corporations, including significant decision-making responsibilities and invaluable experience. With respect to Joann Johnson, no specific evidence showed what corporate decisions she had made since taking over as president of Cowhill Farms in 1989 or how her corporate activities had substantially increased in 1989 to correspond to the significant increase in her salary since 1988.

We hold that substantial evidence supports the determination of the Commissioner that there was a fictitious family salary arrangement in this case and that the Commissioner did not err in making adjustments to John Johnson, Sr.'s wages and income for 1990 for the purpose of computing excess earnings under 42 U.S.C. § 403.

Accordingly, the order of the district court is affirmed in part and reversed in part and the case is remanded to the district court for further proceedings.

A true copy.

Attest:

23

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.