**Morris SKALET, Plaintiff-Appellee,**

v.

**Robert H. FINCH, Secretary of Health, Education and Welfare, Defendant-Appellant.**

**No. 20093.**

United States Court of Appeals, Sixth Circuit.

Sept. 10, 1970.

Patricia S. Baptiste, Department of Justice, Washington, D.C., William D. Ruckelshaus, Asst. Atty. Gen., Kathryn H. Baldwin, Atty., Department of Justice, Washington, D.C., John L. Bowers, U. S. Atty., Knoxville, Tenn., on the brief, for appellant.

Lewis S. Howard, Knoxville, Tenn., Elliott D. Adams, Knoxville, Tenn., on the brief, for appellee.

Before PHILLIPS, Chief Judge, and WEICK and PECK, Circuit Judges.

PHILLIPS, Chief Judge.

This case arises under the Social Security Act. The claimant, Morris Skalet, was denied retirement insurance benefits by the Secretary on the grounds that he had received "excess earnings from self-employment." On review the District Court reversed the decision of the Secretary. The Secretary appeals. We reverse the judgment of the District Court and reinstate the decision of the Secretary.

Mr. Skalet owned and operated a pawnshop and jewelry store in Knoxville, Tennessee, in which his unmarried son, Victor, worked full time at a salary of $4500 per year and his wife worked part time at no salary.

Mr. Skalet reached age 65 in 1967. In January of that year, as evidenced by a bill of sale, he entered into an agreement with his wife and son, whereby he transferred to them as partners his sole proprietorship which he had operated over twenty years. As consideration for the transfer Victor and his mother signed two notes, both unsecured, one for $835.20 due December 1, 1967 (which was paid) and a second for $14,500 with four per cent interest payable on demand. Together the notes equalled the book value of the business. Under the agreement Mr. Skalet's wife and son were to retain him as an employee of the company and pay to him $125 per month as compensation for his services and advice.

The statute requires that an applicant for old age benefits who has earnings in any month must demonstrate "to the satisfaction of the Secretary" that he was not engaged in self employment and did not render substantial services for wages in excess of the statutory maximum. 42 U.S.C. § 403(f) (4) (A). The Secretary has authority to consider the substance of any transaction over its form. Ludeking v. Finch, 421 F.2d 499 (8th Cir.). See also, Dondero v. Celebrezze, 312 F.2d 677 (2d Cir.) (scheme for shifting wages from the claimant); Newman v. Celebrezze, 310 F.2d 780 (2d Cir.) (shifting corporate income from father to son); and Flemming v. Lindgren, 275 F.2d 596 (9th Cir.) (reconstruction of a reasonable corporate income under all the circumstances).

The findings of fact of the Secretary, if supported by substantial evidence, are conclusive. Walters v. Gardner, 397 F.2d 89 (6th Cir.). The case is not tried de novo in the District Court. Finality extends both to facts and inferences reasonably drawn therefrom when supported by substantial evidence. Domanski v. Celebrezze, 323 F. 2d 882 (6th Cir.), cert. denied, 376 U.S. 958, 84 S.Ct. 980, 11 L.Ed.2d 976.

In the present case there was an evidentiary hearing at which Mr. Skalet testified, as well as a supplemental hearing where the wife and son testified. Their attorney was present at both hearings and participated in the proceedings. The hearing examiner, in a decision which became the final decision of the Secretary, concluded that for purposes of the Social Security Act Mr. Skalet

had made no valid transfer to Mrs. Skalet, but merely was attempting to shift his income to her. It was ruled that Mr. Skalet had received income from self employment in excess of the statutory maximum for ten months of 1967.[1]

The Secretary based his conclusion upon the following facts and inferences:

Before the transfer Mr. Skalet signed all checks drawn on the company's accounts, handled about fifty per cent of the loans and made most of the bookkeeping entries on the records of the firm. His son's duties had been increasing for a number of years, and prior to the sale the son made the other fifty per cent of the loans and ordered all new merchandise and supplies. Following the sale Mr. Skalet's duties decreased, although he still spent some 24 hours per week in the store, making some loans, waiting on customers and performing custodial and other chores. There was a corresponding increase in the duties of the son, who now made ninety per cent of the loans and maintained the bookkeeping records. As for Mrs. Skalet, the hours spent in the store after the sale may have increased somewhat. There was however no qualitative change in her duties, notwithstanding that her receipts from the business, as a one-half share of the partnership profits, increased from zero to $5,543. Victor's salary rose by some $650 to $5,543. Mr. Skalet received only his salary of $125 per month, which was the maximum then allowed under the Social Security Act.

Victor was unmarried and resided with his parents. The income to the family unit remained the same, notwithstanding the changes made respecting the business. Victor continued to give his mother some $100 per month to help defray the household expenses, as he had done prior to the transfer of the business. Before the transfer Mr. Skalet paid all the personal and living expenses on checks drawn by him from the company accounts. After the transfer Mrs. Skalet drew on the partnership account each week an amount which was deposited in a joint account which she now maintained with her husband and in which his salary was deposited. Household expenses were now paid out of this joint account. Mr. Skalet testified that there was little, if any, appreciable change after the sale in the family's management of its personal affairs.

The entire transaction was on credit, evidenced by unsecured notes, for the book value of the company which was a thriving on-going business. The testimony of Mr. Skalet was not clear as to his understanding of the terms of payment of the demand note for $14,500.

For nearly three months after the purported transfer, Mr. Skalet, as transferor, remained the only person who could draw upon the firm's account, and it was not until some six months after the transfer that the account of the firm was changed to reflect the new partnership status of the business. It was not until April of 1967 that the suppliers and business associates of the firm were informed of the change in ownership.

On the basis of the foregoing facts the Secretary concluded that "claimant has failed to sustain his burden of proving * * * that he has transferred the full interest in his business to others, and has in fact retired," and that the transaction was not *bona fide* for social security purposes. It was decided that amounts paid to Mrs. Skalet were in reality compensation to the husband for services rendered. It then followed that Victor Skalet's real partner was not his mother, but his father, the claimant, whose income was channeled through Mrs. Skalet.

■ After a review of the record made before the hearing examiner and on which the decision of the Secretary rests, we conclude that the decision was clearly supported by substantial evidence and that the District Court erred in reversing it.

---

1. During November and December Mr. Skalet did not perform any services due to illness and was allowed benefits for those months.

Mr. Skalet argues that the Secretary's decision will mean that no valid partnership exists. Such is not the import of that decision. Indeed the Secretary noted that the parties did appear to have fulfilled the formal requirements for operating as a partnership. It is clear, however, that the Secretary did not undertake to pass on the validity of the arrangements for any purpose other than the limited question raised under the Social Security Act. Further we note that what may fulfill the formal requisites for other purposes may nevertheless fail the substance test the Secretary is authorized to make under the Act.

The proceedings in the present case, of course, are limited to the time period involved herein and are without prejudice to the right of the claimant to file another application based upon any change in facts arising after the time covered by this proceeding.

The judgment of the District Court is reversed and the decision of the Secretary is reinstated.

Godbold, Circuit Judge, dissented.