891 F.2d 292
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Everett SCROGGINS, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 88-2077.
 United States Court of Appeals, Sixth Circuit.
 Dec. 12, 1989.
 
 Before MERRITT, Chief Circuit Judge, KENNEDY, Circuit Judge, and R. ALLAN EDGAR, District Judge.*
 PER CURIAM:
 
 
 1
 Appellant Everett Scroggins filed suit in the United States District Court for the Western District of Michigan seeking judicial review of a final decision of the Secretary of Health and Human Services. The Secretary's decision found that claimant was not entitled to a period of disability or disability insurance benefits and was not eligible for supplemental security income under Title II and Title XIV of the Social Security Act. The District Court affirmed the Secretary's decision.
 
 
 2
 On appeal, appellant argues that there is not substantial evidence to support the Secretary's findings and that the Secretary improperly relied on vocational evidence and the Medical Vocational Guidelines. We find that the Secretary properly evaluated Scroggins' claim under the correct legal standards, and that his findings are supported by substantial evidence. Accordingly, we AFFIRM the District Court's decision.
 
 
 3
 Appellant applied for disability insurance benefits and supplemental security income on January 23, 1986, alleging that he became disabled six days earlier due to poor sight and arthritis. On January 17, appellant had quit his job.
 
 
 4
 On February 3, 1986, appellant received a consultative examination by Dr. Davis. Appellant told the doctor he had had back pain for fifteen years, but only used aspirin or Tylenol for his pain. He had a limited range of motion in left lateral flexion and left rotation, but flexion, extension, right lateral flexion and right rotation were full. Appellant did not complain of headaches, left arm problems, or blackouts at this time. Dr. Davis concluded that appellant suffered from osteoarthritis and loss of the right eye.
 
 
 5
 Appellant's first medical treatment for his alleged disability was by Dr. Kim, a general practitioner, on April 14, 1986, three months after he filed for benefits. Dr. Kim testified in a brief deposition that he had seen appellant five times and prescribed an anti-inflammatory medication for his back. He opined that appellant had a severe impairment and could not handle an eight hour job.
 
 
 6
 On July 11, 1986, Dr. Campbell performed a consultative examination regarding appellant's headaches and blackouts. Appellant told Dr. Campbell that the headaches disappear within about one-half hour of taking Tylenol. A head CT scan was unremarkable and an EEG was normal. Dr. Campbell noted a cough syncope and "no clues for primary neurologic cause for his blackout spells."
 
 
 7
 Appellant was admitted to the emergency room on September 15, 1986. There he complained of shoulder and head pain. He was discharged within a few hours with a diagnosis of right suboccipital and cervical muscle strain.
 
 
 8
 At the ALJ hearing, appellant testified that he had problems with his right eye as a child and that he had had it removed six years prior to the hearing. He indicated that two or three minutes after a blackout, he feels "great." He said that he could possibly pick up ten pounds from the floor and that he could lift ten pounds from a table. No doctor has put any restrictions on him. He visits his brother-in-law every day, who lives about one block away from him. He goes from Battle Creek to Pontiac to watch every Detroit Lions home game. He also can rake leaves, mow the lawn, and work in the garden.
 
 
 9
 Section 405(g) of the Social Security Act authorizes judicial review of a final decision of the Secretary. "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g). "Substantial evidence means more than a scintilla; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir.1976) (quoting Combs v. Gardner, 382 F.2d 949, 956 (6th Cir.1967)). We must affirm the Secretary's decision if his findings and inferences reasonably drawn from the whole record are supported by substantial evidence. Skalet v. Finch, 431 F.2d 452, 454 (6th Cir.1970).
 
 
 10
 Appellant first argues that the Secretary improperly evaluated and rejected appellant's testimony of pain. Appellant contends that the Secretary based his rejection of appellant's complaints of pain on an invalid pain evaluation standard. The standard to be used in evaluating claims of disabling pain is found in Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.1986):
 
 
 11
 First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.
 
 
 12
 Because the medical evidence established that appellant has musculoskeletal osteoarthritis, loss of vision in the right eye, and headaches and blackout spells, appellant established an underlying condition using objective medical evidence. The Secretary properly found, however, that there was no objective medical evidence that confirmed or gave rise to an expectation of pain as severe as that alleged.[1]
 
 
 13
 Substantial evidence supports this finding. The relevant medical evidence corroborates the Secretary's determination that appellant's complaints of pain were disproportionate to the clinical and medical signs. In February 1986, x-rays showed only a slight posterior offset and a small osteophyte projection. Joint App. at 118. Range of back motion was full in all planes with the exception of left lateral flexion that lacked only five degrees, and left rotation that lacked twenty degrees. Joint App. at 120. In July of 1986, reflexes and sensation were normal. With the exception of weakness upon shoulder abduction and hip flexion, muscle strength was normal. Joint App. at 129. In September 1986, x-rays of the cervical spine revealed a normal alignment, well-maintained intervertebral space and only slight spurring. Joint App. at 148. It is apparent that the evidence indicates that with respect to appellant's back, nothing more than a slight deviation from normal exists. Substantial evidence, therefore, supports the Secretary's finding that problems with back pain would not produce a limitation of a disabling extent nor adversely impact upon appellant's ability to perform light level work.
 
 
 14
 Furthermore, there is no objective evidence with respect to appellant's claims of disabling arthritis of the arm or leg. In February of 1986, x-rays revealed only early degenerative changes in the left shoulder, and revealed that the range of motion in the shoulder, as well as in the knees and hips, was also within normal limits. Joint App. at 118-20. Thus there is no objective medical evidence indicating that appellant has any upper or lower extremity problems that would preclude light work.
 
 
 15
 Although appellant complains of headaches and blackout spells, there is no objective medical evidence supporting the existence of a neurological problem. In July 1986, a CT scan was negative and an EEG was normal. Joint App. at 128-29. Dr. Campbell reported, "I can detect no clues for primary neurologic cause for his black-out spells." Finally, although appellant's right eye was removed, this was done six years prior to quitting work. Thus the resultant lack of binocular vision does not preclude all work. Additionally, blindness in one eye alone does not qualify a claimant for disability. Bradley v. Secretary of Health and Human Servs., 862 F.2d 1224, 1226 (6th Cir.1988).
 
 
 16
 In addition to the medical evidence, evidence of appellant's daily activities support a finding that he is not disabled. See Gist v. Secretary of Health and Human Servs., 736 F.2d 352, 357-58 (6th Cir.1984). Appellant testified that he is able to drive. Joint App. at 32. He testified that he visits his brother-in-law daily. Joint App. at 42. He is generally capable of feeding and dressing himself, and he is able to perform yard work. Joint App. at 43-44. Further, he stated that he often rides in a car for hours to attend football games in Pontiac, Michigan. This evidence supports a finding that appellant was not credible when he testified that he could sit for only ten minutes. In light of the above evidence, we conclude that there is substantial evidence to support the Secretary's findings.
 
 
 17
 Appellant also contends that the Secretary improperly relied on vocational evidence and the Medical Vocational Guidelines (the "Grid") to determine that a significant number of jobs exist in the national economy that appellant can perform. The Secretary found that appellant has the residual functional capacity for light work if that work is performed in a safe environment and does not require binocular vision. The ALJ, in making his determinations, considered the regulations and the Grid. Because appellant cannot perform the full range of light work, the ALJ could not have properly used the Grid to direct a decision; he may, however, use it as a framework for his decision. 20 C.F.R. § 404(P) (App. 2 § 200.00(e)). Although appellant argues that the ALJ incorrectly used the Grid to direct a finding of "not disabled," there is nothing in the record to indicate that the ALJ used the Grid as anything other than a framework. In fact, the ALJ turned to a vocational expert for an expert opinion.
 
 
 18
 The vocational expert testified at appellant's hearing in response to the following hypothetical question posed by the ALJ:
 
 
 19
 If I found that the claimant's residual functional capacity is such that he has the maximum sustained exertional work capability to perform light work, as defined in the regulations, that he has no vision in his right eye, and that he cannot work around dangerous machinery, unprotected heights, or moving vehicles [sic]. Based upon his age, education, training, and background, do you know of any jobs which exist in this region which you believe he would be vocationally qualified to perform?
 
 
 20
 Joint App. at 57. The vocational expert responded that appellant was capable of approximately 11,000 janitorial positions in the lower peninsula of the State of Michigan, of approximately 4,500 horticulture aide and greenhouse worker positions, and approximately 6,000 security positions. Joint App. at 57.
 
 
 21
 Appellant objects to the use of the hypothetical question put forward to the vocational expert by the ALJ; appellant argues that the question was inaccurate and incomplete. The question, however, noted appellant's age, education, training and background, as well as his physical impairments and limitations. Appellant specifically objects to the fact that the ALJ overlooked that the evidence allegedly demonstrated that appellant could only perform basic work activities for a few minutes, and instead assumed that he could perform a limited range of light work. The ALJ is free to consider the credibility of the testimony of appellant where substantial evidence supports his findings, however. See Bradley, 862 F.2d at 1227; Eckberg v. Secretary of Health and Human Servs., No. 81-3702 (6th Cir. March 8, 1983) (unpublished decision); Gee v. Schweiker, No. 81-5164 (6th Cir. June 8, 1982) (unpublished decision). As noted above, substantial evidence supports the ALJ's decision to discredit appellant's testimony in the present case. Therefore, we find that the ALJ's hypothetical question posed to the vocational expert was not improper.
 
 
 22
 Accordingly, we AFFIRM the decision of the District Court.
 
 
 
 *
 The Honorable R. Allan Edgar, United States District Court for the Eastern District of Tennessee, sitting by designation
 
 
 [1]
 Appellant seems to be arguing that the standard set forth in Duncan is improper. However, "[a] panel of this Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision." Salmi v. Secretary of Health and Human Servs., 774 F.2d 685, 689 (6th Cir.1985)