RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 11a0010p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

J.C. SCOTT,

*Petitioner,*

*v.*

UNITED STATES RAILROAD RETIREMENT
BOARD,

*Respondent.*

No. 09-4045

On Petition for Review of an Order
of the Railroad Retirement Board.
No. 07-AP-0057.

Argued: November 30, 2010

Decided and Filed: January 11, 2011

Before: SILER, CLAY, and GIBBONS, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Cary L. Bauer, GILREATH & ASSOCIATES, Knoxville, Tennessee, for
Petitioner. Kelli D. Johnson, U.S. RAILROAD RETIREMENT BOARD, Chicago,
Illinois, for Respondent. **ON BRIEF:** Sidney W. Gilreath, GILREATH &
ASSOCIATES, Knoxville, Tennessee, for Petitioner. Kelli D. Johnson, Steven A.
Bartholow, U.S. RAILROAD RETIREMENT BOARD, Chicago, Illinois, for
Respondent.

─────────────────

## OPINION

─────────────────

SILER, Circuit Judge. J.C. Scott petitions for review of the Railroad Retirement
Board's denial of his request for waiver of recovery of an overpayment in benefits under
45 U.S.C. § 231i(c). While receiving disability payments, Scott earned more per month

from work than the Act allowed, resulting in overpaid benefits. He repaid that amount to the Board, but now seeks a waiver of recovery. The Board denied his request because it determined that Scott was at fault in causing the overpayment. For the following reasons, we **AFFIRM**.

## I.

Scott suffered from post traumatic stress disorder resulting from an attack by a coworker. In 1992, the Board awarded Scott an occupational disability annuity under 45 U.S.C. § 231i(c). The annuity was not payable for any month in which the annuitant earned more than $400 per month from employment or self-employment, and Scott agreed to notify the Board if he performed work while receiving his annuity.

From a data exchange with the Social Security Administration in 1997, the Board was advised that Scott earned $2,800.00 in 1996 through the corporation Scott and Associates, Inc. The Board interviewed Scott regarding his continuing disability. Scott indicated that he is president of Scott and Associates, a "family run" Subchapter S corporation that provides "railroad operations consulting." He and his wife are the sole owners of the corporation. Scott reported that he began working in July 1995 and his monthly earnings were $350.00. The Board determined that Scott continued to be disabled for his regular employment and remained eligible for benefits. The Board reminded Scott that he must report earnings of more than $400.00 "from any work."

In 1999, the Board's Office of Inspector General ("OIG") received a complaint of possible fraud. The OIG found that Scott had become an expert in reconstructing rail accidents. It discovered that Scott had been involved in approximately 50 cases, charging the following hourly fees for his services: $175.00 per hour for depositions and expert testimony; $100.00 per hour for fieldwork; and $85.00 per hour for travel. It also found that Scott and Associates had received annual revenues of between $50,000.00 and $250,000.00 per year between 1996 and 2001. These earnings paid Scott's salary and his wife's secretarial salary, with the remaining revenue disbursed to pay the

monthly rent for the company's office space in their home, attorney fees, and various personal expenses.

During the OIG investigation, in a letter dated December 20, 2001, Scott informed the Board that he anticipated his monthly income would exceed the $400.00 per month restriction and requested a suspension of his disability annuity. The Board suspended Scott's annuity effective January 1, 2002.

The OIG determined that Scott owed $130,372.36 in overpaid benefits because Scott and Associates did not function as a bona fide corporation. It concluded that Scott's reported earnings were not proportionate to the services he rendered to the corporation. For example, Scott claimed he earned a salary of only $350.00 per month for his expert services, while his wife earned $750.00 per month as secretary. Additionally, the corporation's income was freely available to Scott and his wife for personal uses. The OIG recharacterized Scott's contribution to the corporation as 80% of the corporation's earnings. With the 80% adjustment, Scott exceeded the $400.00 per month cap on earnings.

In 2004, Scott and his wife were indicted by a federal grand jury on multiple counts of mail fraud, theft of government funds, false statements, and making a false report to the Board. Meanwhile, in January 2005, the Board sent Scott a debt recovery letter advising him that he had received $130,372.36 in disability benefits that he was not entitled to receive. Scott repaid that amount to the Board. In May 2005, the jury acquitted Scott and his wife of all charges.

In light of the jury's verdict, Scott requested that the Board return his repayment and waive recovery of the overpayment. The Board responded that Scott had been erroneously paid benefits, and informed Scott that the verdict in the United States District Court was not a decision with respect to his entitlement to a disability annuity. Scott requested reconsideration, arguing that he did not conceal information from the Board and properly informed the Board of the nature of his business and annual earnings. In 2006, the Board's debt specialist determined that Scott was at fault in causing the overpayment and denied Scott's request for waiver of recovery. Scott then

appealed to the Board's Bureau of Hearings and Appeals, maintaining that he had relied on the advice of his attorney and accountant to set up the corporation to protect personal assets and comply with the law. The hearings officer again found Scott at fault in causing the overpayment and denied waiver of recovery.

Scott then appealed to a three-member Board. In 2008, a majority of the Board found Scott at fault in causing the overpayment and denied his request for waiver. One member of the panel dissented, pointing out that no findings had been made regarding whether Scott reasonably relied on his accountant's advice. The dissent noted, however, that even if Scott was without fault, he must still show that recovery would cause financial hardship or be against equity or good conscience. The dissent pointed out that Scott declined to present financial records or other evidence on those issues. Scott appealed the Board's decision to this court.

## II.

The findings of the Board as to the facts, if supported by the evidence and in the absence of fraud, shall be conclusive. 45 U.S.C. § 231g. We should not set aside a decision of the Board if it is supported by substantial evidence in the record and is not based on an error of law. *Coker v. Gielow*, 806 F.2d 689, 693 (6th Cir. 1986). If the record supports the Board's decision, we must accept it without making an independent evaluation of the evidence. *Crenshaw v. R.R. Ret. Bd.*, 815 F.2d 1066, 1067 (6th Cir. 1987).

45 U.S.C. § 231i(a) requires the Board to recover an overpayment of annuity benefits. Section 231i(c) provides for waiver of recovery when both (1) the individual is without fault in causing the overpayment, and (2) recovery would be contrary to the purpose of the Act or against equity or good conscience. By its language, § 231i(c) gives discretion to the Board in making the decision of whether to grant waiver of recovery. *Phillips v. R.R. Ret. Bd.*, 833 F.2d 84, 84 (6th Cir. 1987).

Under the first prong, regulations promulgated pursuant to the Act define "fault" as "a defect of judgment or conduct arising from inattention or bad faith." 20 C.F.R.

§ 255.11(b). Judgment or conduct is defective when it deviates from the standard of reasonable care necessary to comply with the Act. *Id.* "Unlike fraud, fault does not require a deliberate intent to deceive." *Id.* Whether an individual is at fault depends on the circumstances surrounding the overpayment, and relevant factors include the ability of the individual to understand the reporting requirements, the particular cause of overpayment, and the number of occasions an individual may have made erroneous statements. *Id.* § 255.11(c). The Board will find an individual at fault when he fails to provide information to the Board that he "knew or should have known to be material," and when the individual makes a statement that he "knew or should have known was incorrect." *Id.* § 255.11(d)(1)(i)-(ii).

Under the second prong, it is contrary to the Act's purpose to recover from an individual who needs the overpaid annuity to meet ordinary and necessary living expenses. *Id.* § 255.12(a). "If either income or resources, or a combination thereof, are sufficient to meet such expenses, recovery of an overpayment is not contrary to the purpose of the Act." *Id.* Recovery is against equity or good conscience when an individual relies on an overpayment, relinquishing a significant and valuable right or changing his position to his detriment. *Id.* § 255.13.

Scott contends the Board asked the wrong question. He argues that the Board evaluated whether he understood the earnings limitation, rather than asking whether Scott knew the revenue from his corporation would be considered "earnings" for purposes of his annuity. Scott argues that the jury's acquittal indicates he was without fault in causing the overpayment. He maintains that he relied in good faith on the advice of professionals in structuring his corporation.

Substantial evidence supports the Board's decision. A reasonable person, upon review of the record, could determine that Scott was at fault in causing the overpayment. Even though it is not unlawful for Scott to arrange his business affairs through a corporate entity to qualify for government benefits, the Board may closely scrutinize the arrangement to determine whether the corporation is bona fide. *See Heer v. Sec'y of Health & Human Servs.*, 670 F.2d 653, 655 (6th Cir. 1982) ("Secretary has the right to

examine the substance over the form of business transactions and relationships . . . ."); *Skalet v. Finch*, 431 F.2d 452, 454 (6th Cir. 1970) (holding substantial evidence supported Secretary's determination where "amounts paid to [claimant's wife] were in reality compensation to the husband for services rendered"); *Rose v. Richardson*, 348 F. Supp. 164, 167-68 (S.D. Ohio 1972) (holding substantial evidence supported Board's denial of benefits where claimant's business was a "sham" corporation "used simply as a conduit for the claimant's personal funds"), *aff'd*, 493 F.2d 1406 (6th Cir. 1974) (table).[1]  Courts have permitted the recharacterization of dividends from a Subchapter S corporation where the dividends were received in lieu of salary, in order to reflect the compensation commensurate to the individual's service to the corporation. *See Ludeking v. Finch*, 421 F.2d 499, 503 (8th Cir. 1970) (holding that distributed Subchapter S dividends might properly be considered "wages").

Moreover, Scott had opportunities to inform the Board of the extent of his contributions to, and financial benefits from, Scott and Associates.  Scott failed to inform the Board of his return to work in 1995, which he agreed to do upon receiving benefits. It was not until the Board contacted Scott in 1997 about the wages he filed with the Social Security Administration that Scott acknowledged his return to work as a railroad expert.  Even after being contacted, Scott did not apprise the Board of the extent of his work for Scott and Associates.  Scott's services as an expert in railroad related matters were the sole source of revenue for the corporation, which generated hundreds of thousands of dollars in earnings.  Additionally, while Scott disclosed his $350.00 monthly salary, he failed to disclose his receipt of disbursements or his unfettered use of corporate funds for personal expenses.

Because substantial evidence supports the Board's conclusion that Scott was at fault in causing the overpayment, it is not necessary to consider the second prong of the analysis.  However, even if we were to find Scott not at fault, he fails the second prong.

---

[1] While these cases involved social security benefits rather than railroad retirement benefits, the standards and rules for determining disability under the Railroad Retirement Act are identical to those under the Social Security Act. *See, e.g.*, *Goodwin v. R.R. Ret. Bd.*, 546 F.2d 1169, 1172 (5th Cir. 1997); *Burleson v. R.R. Ret. Bd.*, 711 F.2d 861, 862 (8th Cir. 1983).

First, there is no evidence that recovery of overpayment would cause Scott financial hardship. *See* 45 U.S.C. § 231i(a). Scott had sufficient resources in 2005 to write a $130,372.36 check, and there is no indication he needs the overpayment to meet ordinary and necessary living expenses. 20 C.F.R. § 255.12(a). As the dissenting member of the Board pointed out, Scott declined to present evidence suggesting otherwise.

Similarly, there is no evidence that recovery of the overpayment is against equity or good conscience. *See* 45 U.S.C. § 231i(c). Scott argues that the decision to bring criminal charges rather than administrative remedies was designed to retaliate against him because of his expert testimony against the railroad in numerous cases. He states that sources which may be judicially noticed support this argument but fails to identify these sources. Absent such a showing, there is no record evidence that the choice to pursue criminal charges rather than administrative remedies constituted retaliation or harassment by the Board.

**AFFIRMED.**