John W. **GARDNER, Secretary of Health, Education and Welfare, Appellant,**

v.

**Eli M. HALL, Appellee.**

**No. 8650.**

United States Court of Appeals
Tenth Circuit.

Sept. 12, 1966.

---

Jack H. Weiner, Attorney, Department of Justice (John W. Douglas, Asst. Atty.

Gen., Bruce Green, U. S. Atty., David L. Rose, Attorney, Department of Justice, on the Brief), for appellant.

Lowry McKee, Tulsa, Okl., for appellee.

Before MURRAH, Chief Judge, and BREITENSTEIN and SETH, Circuit Judges.

SETH, Circuit Judge.

This action was commenced by a claimant for old age insurance benefits under the Social Security Act to review a decision by the Secretary of Health, Education and Welfare. 42 U.S.C.A. § 405(g). The trial court reversed the decision of the Secretary which had imposed deductions against all of the claimant's old age insurance benefits for the year 1961 and thereafter. The trial court ruled there was no substantial evidence to sustain the findings of the Secretary.

The record shows that the claimant when he attained the age of sixty-five years made application for old age insurance benefits. He was denied benefits on his application because the agency held that he had received remuneration of more than the permitted amount for services rendered to a family ranching corporation. 42 U.S.C.A. § 403(f) (3). The claimant requested reconsideration and received a Reconsideration Determination in which it was stated that the benefits were denied because there was undistributed income and earnings "channeled to him" in the family corporation. A hearing was had before the Hearing Examiner who also found that the claimant was not entitled to benefits. Upon a review by the Appeals Council a decision was rendered which affirmed the decision of the Hearing Examiner with some modification. The claimant thereupon commenced the proceedings in the United States District Court from which this appeal has been taken.

The record shows that the claimant, Mr. Hall, together with his wife and three adult sons, operated a farm or ranch as a partnership. Each of the part-

ners had a one-fifth interest in the partnership, but none of the partners drew salaries for their services. Mr. Hall was in active charge of the ranch during the partnership operation, and Mrs. Hall was likewise active in doing the bookkeeping for the ranch and related activities. In December 1960 a corporation was formed for the operation of the ranch, and each of the former partners received one-fifth of the capital stock and received credit on the corporate books in recognition of their partnership accounts. The corporation elected the claimant as president, his wife secretary-treasurer, and the three sons as vice presidents. Each of the officers, except Mr. Hall, received a salary of $12,000.00 a year. Mr. Hall received no salary. The corporation elected to be treated for federal income tax purposes as a partnership under Subchapter S of the Internal Revenue Code.

The record also shows that Mrs. Hall, upon receipt of her annual salary from the corporation, would ordinarily deposit it in a joint checking account that she and her husband maintained. The record shows, however, that Mr. Hall during the period in question did not draw on this account although he was empowered to do so. Some of the household expenses were paid from this account. The balance was loaned by Mrs. Hall back to the corporation, and its accounts reflect this as a personal loan by Mrs. Hall.

The claimant showed before the Hearing Examiner that he received no salary or other remuneration directly from the corporation for his personal services. The claimant's case thus showed in substance that he did perform some service to the corporation by way of advice to the other members of the family, and that this service amounted to some two or three hours of work daily. The record shows that Mrs. Hall spent some four or five hours' work daily in the performance of her services to the corporation. The claimant's case further showed that upon incorporation, all of the former partners with the exception of Mr. Hall commenced to receive salaries for their services. Testimony presented as part of the claimant's case thus showed that there was no switching of compensation from the husband to the wife at the time of the incorporation. Instead it showed that Mrs. Hall continued to perform the same services and was compensated as the other officers while Mr. Hall received nothing. In so presenting his case, the claimant met his statutory burden of proof.

The Secretary's findings that Mr. Hall rendered services are based upon substantial evidence, including testimony of the claimant. The Secretary's finding as to the value of these services is likewise supported in the record. However, the principal issue throughout the proceedings has been whether or not the claimant actually received wages for these services. The Government during the course of these proceedings has advanced several theories in an attempt to demonstrate how Mr. Hall received remuneration from the corporation.

As indicated above, in the initial determination and in the Reconsideration Determination, the theory adopted as to how the claimant was paid by the corporation for his services was that it was "channeled" to him and his wife " * * * in the form of undistributed income and dividends." It was also stated by the department that "such income being called undistributed income and dividends does not alter the fact that it is actually remuneration for services being performed by the wage earner. * * *"

The Hearing Examiner adopted a somewhat different theory to explain how the claimant was paid. He reasoned that since the salary paid to Mrs. Hall was deposited in the couple's joint bank account, claimant thereby received some benefit from it, and since claimant worked half as many hours as Mrs. Hall, his services were worth $6,000.00 per year. The Examiner thus stated in part that the claimant " * * * indirectly received income for his services in con-

nection with the business by reason of the access he had to the $12,000 per year salary received in the name of Helen Hall, his wife, by reason of their joint bank account."

At the next step in the administrative proceedings, that is before the Appeals Council, the record shows their decision adopts the findings, conclusions, and inferences of the Hearing Examiner " * * except as otherwise indicated herein." The Council does not mention the joint bank account theory in its opinion but instead discusses certain portions of the Internal Revenue Code of 1954, including Section 1375, which empowers the Commissioner of Internal Revenue to reallocate payments made from an electing small business corporation among the family shareholders.

The Government on this appeal in its brief treats the issue as one of reallocation to Mr. Hall of part of the salary paid to Mrs. Hall as being within the power of the Secretary to reallocate compensation received from family corporations among members of the family.

Thus the principal issue on this appeal revolves around the salary paid to Mrs. Hall by the corporation. Secondly it concerns the treatment as wages of undistributed profits and income of a corporation which has elected under the Federal income tax statutes to be taxed as a partnership.

The Secretary has, without question, the authority and the duty to pierce any fictitious arrangements among family members, and others, to shift salary payments from one to the other when the arrangement is not in accord with reality. The cases clearly demonstrate, as in Folsom v. O'Neal, 250 F.2d 946 (10th Cir.), where a person receiving a salary was not a bona fide employee the payment may be ignored for qualification purposes. Or in Poss v. Ribicoff, 289 F.2d 10 (2d Cir.), where there was a shifting of salary from husband to wife, and similarly in Flemming v. Lindgren, 275 F.2d 596 (9th Cir.); Newman v. Cele-

brezze, 310 F.2d 780 (2d Cir.), and Dondero v. Celebrezze, 312 F.2d 677 (2d Cir.). However, there must be facts clearly developed in the record to support such a reallocation of salary.

The record before us contains no evidence, and no findings have been made that the salary paid Mrs. Hall is in any way excessive or not earned by her. There is no evidence to show that there was any shifting in the corporation of salary payments from the husband to the wife. As described above, the Secretary found that Mr. Hall's services were worth as much as Mrs. Hall's, that he worked half as long as she did, and his services were worth $6,000.00 per year. Necessarily therefore Mrs. Hall's services were found to be worth $12,000.00 per year. This being the case, there are no dollars paid to Mrs. Hall by way of salary which in reality represent services rendered by Mr. Hall. Therefore, the series of cases cited by the Secretary in his brief for reallocation of salaries, referred to above, are not applicable here. Furthermore since Mrs. Hall's salary was all her money, the fact that it may have been deposited in a joint bank account makes no difference, she could do what she wished with it including the use of it for household expenses, and the loan of it to the corporation.

We find no authority whatever which would empower the Secretary of Health, Education and Welfare to allocate a portion of the corporation's undistributed profit and income to Mr. Hall as remuneration for his services. The Commissioner of Internal Revenue has authority to make some reallocation for tax purposes among family member shareholders, but this certainly does not give the Secretary of Health, Education and Welfare such authority. The fact that there is a Subchapter S corporation here concerned makes no difference, as the corporate entity must be respected. There is no evidence, nor any finding whatever that the corporation was in any manner

a sham or a pretense; instead it was an entirely bona fide corporate entity.

■■ The findings of the Secretary are, of course, conclusive if supported by substantial evidence, 42 U.S.C.A. § 405 (g); Folsom v. O'Neal, 250 F.2d 946 (10th ·Cir.); Dvorak v. Celebrezze, 345 F.2d 894 (10th Cir.), and the inferences drawn from the facts are accorded like treatment. However, when as here, the record does not contain any evidence upon which a finding of receipt of wages may be made the decision of the Secretary must fail. The various theories adopted by the Secretary during the administrative and judicial proceedings to establish a constructive payment are not valid.

Affirmed.

BREITENSTEIN, Circuit Judge (concurring in result).

I concur in the result. The decision of the Secretary is thoroughly unsatisfactory. I do not know what is the basis for the denial of the application for social security benefits. Counsel arguing before us say that the action of the Secretary can be sustained on either the theory of the receipt of income or the reallocation of income. In my opinion the record presented and the reasonable inferences therefrom would sustain either theory. The trouble is that the Secretary found neither. As said in Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168, 83 S.Ct. 239, 246, 9 L.Ed.2d 207 "courts may not accept appellate counsel's post hoc rationalizations for agency action." When we do not know what a decision means, we are powerless to say whether it is right or wrong. United States v. Chicago, M., St. P. & P. R. Co., 294 U.S. 499, 511, 55 S.Ct. 462, 79 L.Ed. 1023. We may not sustain administrative action by supplying adequate and proper grounds which have not been relied on by the agency. Securities and Exchange Commission v. Chenery Corporation, 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995.