**Johannah L. LETZ, Plaintiff,**

v.

**Caspar W. WEINBERGER, the Secretary
of Health, Education and Welfare,
Defendant.**

**Civ. A. No. 74–A–909.**

United States District Court,
District of Colorado.

Sept. 22, 1975.

Hindry & Meyer, P. C., by Thomas J. Constantine and John M. Titler, Denver, Colo., for plaintiff.

James L. Treece, U. S. Atty., by Carolyn J. McNeill, Asst. U. S. Atty., Ronald S. Luedemann, Acting Regional Atty., and Hamilton T. Brown, Asst. Regional Atty., Dept. of Health, Education and Welfare, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

ARRAJ, Chief Judge.

Plaintiff Johannah Letz has instituted this action pursuant to 42 U. S.C. § 405(g), to review a "final decision" of the Department of Health, Education and Welfare (HEW) partially denying her old-age insurance benefits under the Social Security Act.[1] Both parties, after waiving oral argument, have moved for summary judgment, and the case is before the Court upon the pleadings, the briefs of the parties, and a certified copy of the record, including the transcript of the proceeding before the Appeals Council.[2]

Mrs. Letz is a "corsetiere," and according to her testimony operates a unique "bra and corset" shop—the only one like it "between Chicago and San Francisco." She designed and patented the first "up-lift" brassiere in 1932, and is the author of the book *A Youthful Figure is Forever*. Mrs. Letz has long advocated, with the apparent agreement of several doctors, the medical and therapeutic advantages of her designs over the more commercially popular "stretch" undergarments. However, she testified that "after pulling girdles for forty years" her work now "takes the stretch out of" her, and she has developed a condition similar to arthritis, which she

---

1. 42 U.S.C. § 401 *et seq.*

2. Motions for summary judgment may in some cases not be the proper vehicle by which to review a decision of an administrative agency to determine if its conclusions are supported by "substantial evidence," as where that determination must be made by examining a record containing contradictory evidence about controverted material facts.

*Nickol v. United States*, 501 F.2d 1389 (10th Cir. 1974); *Johnson v. Weinberger*, 388 F. Supp. 628 (D.Colo.1974). Unlike the circumstances of those cases, there is here involved the testimony of only one witness, and the facts upon which the administrative decision was based were not controverted. Motions for summary judgment are therefore proper in this instance.

terms "corsitis." She therefore determined in the early 1970's to sell her business.

Plaintiff was advised that the sale of the business, of which she was owner and sole proprietor, could be facilitated in several respects by incorporation. She thereafter incorporated the business pursuant to the laws of Colorado as Bra-Corset, Ltd., effective January 1, 1972. She became the owner of 55% of the stock of the corporation, with one son receiving 25% and another the remaining 20%. In 1972 the corporation paid Mrs. Letz for her duties as President, Secretary, and employee of the corporation $140 per month, the maximum monthly salary which she could earn without deductions being made from her Social Security benefits for "excess earnings." [3]

The corporation and shareholders also elected in 1972 to become a Small Business Corporation pursuant to Subchapter S of the Internal Revenue Code.[4] The effect of this election was to avoid the duplication of taxes upon the corporate earnings and dividends paid to the shareholders. The net profits of the corporation were taxed to the shareholders as dividends, and the corporation itself was taxed as a partnership. The net taxable income of the corporation in 1972, after payment of plaintiff's "salary" of $1,680, was $1,736.00. That income, together with corporate profits from subsequent years, has been invested in a savings account as an "interest bearing corporate asset." None of the funds so invested have been distributed to Mrs. Letz or any other Bra-Corset, Ltd., shareholders.

Plaintiff filed her initial application for retirement insurance benefits with the Social Security Administration in 1968. She was awarded benefits in each year prior to 1972, subject to deductions for certain months in which she derived net earnings from self-employment in excess of the maximal amount permitted.

In 1972, the year here in question, the Administration determined that in spite of incorporation and receipt of a monthly salary below the maximum allowed plaintiff's benefits were still subject to deductions in several months. After notification of this determination in October, 1972, plaintiff sought reconsideration, and upon failing to obtain a recomputation, requested a hearing before an Administrative Law Judge, Bureau of Hearings and Appeal, Social Security Administration.

The Law Judge, on April 12, 1974, upheld the initial administrative decision. He found that plaintiff continued to render "substantial services" to the corporation in 1972 for value in excess of the amount permitted in every month except July and August. On April 22, 1974, plaintiff requested a review of the decision of the Administrative Law Judge by the Appeals Council. The request was granted and a decision rendered on August 7, 1974. The Council upheld the decision of the Law Judge, with the modification that plaintiff was also entitled to benefits for October, November, and December of 1972, but not the first six months. The determination was based upon the finding that plaintiff had "rendered services for wages" of $3,416 in the calendar year 1972, derived by adding the net corporate profit for the year to the salary paid to plaintiff. This was the "final decision" of HEW and the present action was then instituted for review of that decision.

Every individual who attains the age of 62 and satisfies certain specified conditions is entitled to old-age insurance benefits.[5] Deductions may be made from the monthly payments, however, where the applicant has "excess earnings." [6] Earnings is defined as the sum of wages for services rendered and net earnings from self-employment.[7]

---

3. 42 U.S.C. § 403(b). Excess earnings are discussed *infra.*

4. 26 U.S.C. § 1371 *et seq.*

5. 42 U.S.C. § 402(a).

6. 42 U.S.C. § 403(b).

7. 42 U.S.C. § 403(f)(5)(A).

Nevertheless, no part of excess earnings may be charged to any month in which the applicant did not engage in self-employment, or render services for wages in an amount greater than the maximum permitted.[8] Thus, the benefits for any such month may not be reduced regardless of the total earnings during the year. It must therefore be determined whether plaintiff had "excess earnings" in 1972, and if so, to which months they may be applied.

■■ The findings of the Secretary of course cannot be disturbed if supported by substantial evidence. 42 U.S.C. § 405; *Hedge v. Richardson*, 458 F.2d 1065 (10th Cir. 1972); *Trujillo v. Richardson*, 429 F.2d 1149 (10th Cir. 1970); *Gardner v. Hall*, 366 F.2d 132 (10th Cir. 1966). It is equally clear that the courts should not abdicate their "conventional judicial function to review," and where the administrative decision is based upon conclusions not reasonably reached upon due consideration of all the relevant issues presented, or it applies an arbitrary standard, or misinterprets the provisions of the Act or regulations or misconstrues other applicable law, the court may properly reject the agency's decision. *Brannon v. Ribicoff*, 200 F.Supp. 697, 700–01 (D.Mont.1961), and cases cited therein.

Under the Social Security Act provisions here in question, "net earnings from self-employment" means the gross income derived by an individual from any trade or business carried on *by such individual,* less allowable tax deductions.[9] The performance of services by an individual as an employee, is not so included,[10] but rather is "wages for services rendered."[11] The term "wages" means all remuneration for employment,[12] and generally are received by an employee at the time they are paid, whether actually or constructively.[13] Wages are constructively paid when "they are credited to the account of or set apart for an employee so that they may be drawn upon by him at any time although not then actually reduced to possession."[14]

While it appears that the Administrative Law Judge based his decision on a finding that Mrs. Letz had net income *from self-employment* in excess of the maximum allowable,[15] the Appeals Council found that plaintiff rendered services for *wages* as an employee in the same amount. It is not clear whether the Appeal Council's finding based on wages was an intentional or inadvertent reversal of the Law Judge's finding based on self-employment. It is in any event immaterial, for neither conclusion is supported by substantial evidence.

■ In upholding the decision of the Administrative Law Judge the Appeals Council found that the "corporate profit" must be considered "wages" because, although assigned to the corporation the funds were available to the plaintiff "at any time." There is no evidence to support the Council's conclusion, nor could such an inference be made from the evidence before it. There was no finding, nor any evidence presented, that Mrs. Letz received directly or indirectly any of the corporate funds. There was no assertion that the traditional fiduciary duties imposed upon Directors and Officers of corporations do not equally apply

---

8. 42 U.S.C. § 403(f)(1)(E).

9. 42 U.S.C. § 411(a).

10. 42 U.S.C. § 411(c)(2).

11. 20 C.F.R. § 404.1026(a)(2).

12. *Id.*

13. 20 C.F.R. § 404.1026(b).

14. 20 C.F.R. § 404.1026(b)(2).

15. The Administrative Law Judge found that Mrs. Letz continued to render "substantial services" in her activities in the corporation. The term "substantial services" is utilized in the Social Security Act only in regard to "self-employment," and is not utilized in any determination of "wages for services rendered." 42 U.S.C. § 403(f)(4)(A). It would therefore appear that the Law Judge considered Mrs. Letz to have continued self-employment, in spite of the unchallenged existence of a valid corporate entity.

to those in similar positions with corporations which elect to be taxed as a Small Business Corporation under Subchapter S of the Internal Revenue Code. Nor was there any assertion that a majority stockholder who holds such positions does not owe the same duties to the corporation. The conclusion that the funds were available to Mrs. Letz "at any time" ignores the corporate existence, yet there was no finding, and no evidence presented, that the corporation was other than valid and in bona fide existence. Without any such evidence the finding must be considered "clearly erroneous as a matter of law." *Nickol v. United States*, 501 F.2d 1389 (10th Cir. 1974).

The thrust of the Secretary's contention appears to be that the plaintiff nevertheless has constructively received as dividends the corporate profit, and that such constructive dividends may be reclassified by the Secretary as salary for services rendered. The Secretary's position is not as well supported as Mrs. Letz's garments.

The Secretary has without question the authority and the duty to pierce any fictitious arrangements among family members, and others, to shift salary payments from one to the other when the arrangement is not in accord with reality. *Gardner v. Hall*, 366 F.2d 132 (10th Cir. 1966). How-

ever, the remuneration must be *paid* by the employer and *received* by the employee, either actually or constructively, before that power may be brought to bear upon an applicant. There is no evidence that the corporate funds were at any time converted by Mrs. Letz to her personal use, or were ever "credited to or set apart for" plaintiff. The cases cited by the Secretary in support of his position involve the shifting of funds *in fact* paid out by a corporation. *Dondero v. Celebrezze*, 312 F.2d 677 (2d Cir. 1963); *Poss v. Ribicoff*, 289 F.2d 10 (2d Cir. 1961); *Stark v. Flemming*, 283 F.2d 410 (9th Cir. 1960); *Flemming v. Lindgren*, 275 F.2d 596 (9th Cir. 1960); *Gellhaus v. Celebrezze*, CCH UIR Par. 16341 (D.Ala.1963); *Brannon v. Ribicoff*, 200 F.Supp. 697 (D.Mont.1961).[16] But where corporate profits remain undistributed and are not available "at any time" for the personal use of the applicant, the Secretary has no authority to allocate any portion of the funds to the applicant.[17]

The distinction between the authority of the . Secretary to shift salary payments which have in fact been received and his inability to allocate a portion of a bona fide corporation's undistributed profit and income to an applicant is not without precedent. Indeed, the disposition of the present matter must be considered as settled by the decision of the Tenth Circuit in *Gardner v. Hall*, 366

16. The cases of *Stark v. Flemming*, 283 F.2d 410 (9th Cir. 1960); *Flemming v. Lindgren*, 275 F.2d 596 (9th Cir. 1960); and *Brannon v. Ribicoff*, 200 F.Supp. 697 (D.Mont. 1961) involved claimants who had attempted to receive a salary in *excess* of that determined to be reasonable for the years *prior* to retirement in order to be eligible for greater benefits upon retirement. In the other cited cases the claimant upon retirement attempted to receive decreased wages, but was in each case found to be receiving greater amounts because of salaries being paid to others which were available to the claimant at any time, through such means as joint bank accounts. The distinction between the ability of the Secretary to determine either that wages are greater or lesser than amounts claimed is immaterial. What

is crucial is that in each case the amounts credited to the claimant, or deducted from his claimed salary, had in fact been paid out by the corporation, and were either in the possession of the claimant, or a family member, or another from whom the claimant could gain access to the funds at any time.

17. Defendant cites only one unpublished opinion which supports the contention that undistributed corporate profits and income may be reallocated by the Secretary. *Johnson v. Celebrezze*, CCH UIR ¶ 14288 (D. Idaho 1965). The District Court cited no authority for its conclusion, and does not appear to have directly addressed the issue here involved. To the extent that its conclusion differs from that reached today, this Court must with all due respect disagree.

F.2d 132 (10th Cir. 1966). Mr. Hall, together with his wife and three sons, had been operating a farm or ranch as a partnership. A corporation was formed, with each of the former partners receiving one-fifth of the capital stock. The corporation elected Mr. Hall as president, his wife secretary-treasurer, and the three sons served as vice-presidents. The corporation further elected to be treated for income tax purposes as a partnership under Subchapter S of the Internal Revenue Code. Each of the officers except Mr. Hall received a salary of $12,000 a year, whereas before incorporation none had received a salary. It was not disputed that Mr. Hall continued his active participation in the business. The salary of Mrs. Hall was deposited in a joint bank account held with her husband, but the record showed that for the period in question Mr. Hall did not draw on this account though empowered to do so.

The 10th Circuit Court first found that there was no evidence to show any shifting of salary payments from the applicant Mr. Hall to his wife. It next considered the Secretary's claim that the undistributed profits and income of a corporation which had elected to be taxed as a partnership could be treated as wages and reallocated:

> We find no authority whatever which would empower the Secretary of Health, Education and Welfare to allocate a portion of the corporation's undistributed profit and income to Mr. Hall as remuneration for his services. The Commissioner of Internal Revenue has authority to make some allocation *for tax purposes* among family member shareholders, but this certainly does not give the Secretary of Health, Education and Welfare such authority. The fact that there is a Subchapter S corporation here concerned makes no difference as the corporate entity must be respected. There is no evidence, nor any finding whatever that the corporation was in any manner a sham or pretense; in-

stead it was an entirely bona fide corporate entity. *Gardner v. Hall, supra*, at 135–36. (emphasis added).

Defendants seek to avoid the holding in *Gardner v. Hall* by asserting that the present case is distinguishable in that Mrs. Letz was the majority stockholder and President of the corporation, and thus could choose to have the corporation pay her any salary. Yet she chose the maximum amount that would not subject her benefits to deductions. The distinction is without merit. As already noted, the fact that she was a majority stockholder did not render the fiduciary duties she owed the corporation nonexistent. Further, her motive for setting the amount of salary is immaterial.

> It is well settled that there is nothing improper or questionable about a person entering bona fide employment for the express purpose of acquiring a wage record which will enable him to qualify for old-age insurance benefits. Nor does such motivation in organizing a corporation defeat recovery. *Brannon v. Ribicoff, supra* at 703.

> If it be a proper statement of the law that one can enter into an arrangement to receive wages for the sole purpose of bringing himself within the coverage of the Social Security Act if, in fact, he renders services for which he is paid in accordance with such arrangement, . . . we see no reason why a *principal stockholder* is precluded from entering into an arrangement *not* to receive wages for any services performed. *Somers v. Gardner*, 254 F.Supp. 35 (D.Vir.1966) (former emphasis added).

In the *Somers* case a sole proprietor of a farming operation incorporated, served as president of the corporation, and owned *all* of the outstanding stock of the corporation. In a well reasoned opinion the court held that while the Secretary could reclassify *de facto* dividends as salary to reflect appropriate compensation for services rendered, no authority existed to "reallocate" moneys which have never in fact been distrib-

uted in any form by the corporation involved.

The Eighth Circuit, citing *Gardner v. Hall, supra,* reached the same conclusion in *Ludeking v. Finch,* 421 F.2d 499 (8th Cir. 1970). Though unnecessary to its decision, the court agreed that the Secretary has the authority to look through "form to substance" and determine whether "dividends" paid were in fact wages but that undistributed corporate income should not be construed as wages. The applicant for Social Security benefits was a majority stockholder in the corporation.

The Court finds these cases applicable and persuasive,[18] and in any event finds the holding of the Tenth Circuit in *Gardner v. Hall, supra,* controlling. The following determinations are made:

1. The record, pleadings, and briefs of the parties indicate that there is no genuine issue as to any material fact.

2. There is no evidence that the undistributed profits and income from Bra-Corset, Ltd. were available to plaintiff "at any time," nor could such an inference be made from the evidence available. No evidence was presented and no finding was made that the corporation was otherwise than validly formed pursuant to the laws of Colorado and in bona fide existence during the period in question, or that plaintiff had the right to disregard the corporate entity and convert the corporate funds to her personal use.

3. The Secretary was without authority to reallocate the undistributed profits and income of the validly formed and existing bona fide corporation to the plaintiff. It is therefore

ORDERED that the defendant's motion for summary judgment be, and the same hereby is denied, and that the plaintiff's motion for summary judgment be, and the same hereby is granted, and

That judgment be entered for plaintiff and against defendant.

---

18. In reaching this determination, the Court is not unmindful that the Congressional policy underlying the federal Social Security legislation is to ameliorate some of the rigors of life, and requires the Court to interpret the Act liberally. *Dvorak v. Celebrezze,* 345 F.2d 894 (10th Cir. 1965).