**Raphael ESCOE, Plaintiff,**

v.

**Donna SHALALA, Secretary of Health and Human Services[1], Defendant.**

**No. 92–CV–1083 TJM/RWS.**

United States District Court, N.D. New York.

Jan. 18, 1994.

---

1. Pursuant to Fed.R.Civ.P. 25(d)(1), Donna Shalala is hereby ORDERED substituted as defendant in place of Louis W. Sullivan, M.D.

Raphael Escoe, pro se.

Gary L. Sharpe, U.S. Atty., N.D.N.Y., William H. Pease, Asst. U.S. Atty., Syracuse, NY, for defendant.

## MEMORANDUM–DECISION AND ORDER

McAVOY, Chief Judge.

This matter was referred to Magistrate Judge Ralph W. Smith, Jr. for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 44F. This action is brought pursuant to section 205(g) of the Social Security Act (Act), as amended, 42 U.S.C. § 405(g), to review a final determination of the Secretary of Health and Human Services (Secretary) denying plaintiff's application for retirement benefits. Briefs were filed by the parties in accordance with the Standing Order of May 4, 1988, letters were submitted to the court by the pro se plaintiff, and no oral argument was heard.

The magistrate judge's Report–Recommendation, dated February 25, 1993, recommends that plaintiff's claim be dismissed. The plaintiff has filed objections addressing specific portions of the magistrate judge's Report–Recommendation. After examination of the objections, the court finds them to be without merit and adopts the report-recommendation of the magistrate judge.

## I. BACKGROUND

### A. Social Security Earnings Test

Retirement insurance benefits are payable to individuals who have attained 62 years of age, are fully insured and have filed an application. 42 U.S.C. § 402(a). The Act, however, requires that such retirement benefits be reduced for claimants aged 62 to 70 who have excess earnings from wages or self-employment income in a taxable year. 42 U.S.C.

§ 403(f)(4)(A). More specifically, the Act provides, in pertinent part:

> ... [a]n individual will be presumed, with respect to any month, to have been engaged in self-employment in such month until it is shown to the satisfaction of the Secretary that such individual rendered no substantial services in such month ... The Secretary shall by regulations prescribe the methods and criteria for determining whether or not an individual has rendered substantial services with respect to any trade or business.

42 U.S.C. § 403(f)(4)(A).

In 1991, the monthly amount of exempt earnings for retirement benefits was $810, or $9720 per year. See 42 U.S.C. § 403(f)(4)(D); 1991 Cost of Living Increases and Other Determinations, 55 Fed.Reg. 45,-856—45,858 (Oct. 31, 1990). If the claimant's earnings exceeded that amount, $1 for every $3 of excess earning would be withheld from benefits due for those months in which the claimant was under the age of 70 and either worked for wages of more than $810 or rendered substantial services in self-employment. This is the so-called "earnings test".

### B. Facts

Plaintiff was a self-employed dentist prior to his sixty-fifth birthday on March 5, 1991. His wife, Dorcas Escoe, worked with him as a part-time dental hygienist. (Rec. 16). According to his 1990 Federal Income Tax return, in 1989 his business grossed $200,203, netting $62,052. (Rec. 190). He and his wife filed a joint return and their income was commingled. (Rec. 16).

On March 4, 1991, plaintiff and his wife purportedly signed a document entitled "Property Transfer and Contract" which provided the following:

> For one dollar ($1.00) given me in hand and other good and valuable consideration[2]: I, Raphael Escoe, 88 Andrews

---

**2.** At a subsequent administrative hearing, plaintiff declined to elaborate on the substance of this consideration, citing "husband and wife" privilege.

Street, Massena, N.Y. 13662 sell my dental office at this address to Dorcas Escoe.

It is agreed as part of this transfer of property that Dorcas Escoe will run this office as office manager and practice her profession there. She agrees that under no circumstance will I be paid more than $9720 per annum for my service to the office as a dentist.

It is agreed that at the option of Dorcas Escoe she may return the dental office to Raphael Escoe in return for a 5 year contract as office manager. Her salary renumeration [sic] as office manager shall be a commission. Her commission shall be all net profit beyond $9720 which shall go to Raphael Escoe. Dorcas Escoe agrees that under no circumstance [sic] will Raphael Escoe be paid more than $9720 per year. Dorcas Escoe controls the earnings of Raphael Escoe or as owner of the dental office, or as office manager, on commission. Raphael Escoe does not control his earnings.

(Rec. 101).

Plaintiff filed an application for retirement insurance benefits on February 22, 1991, and was asked to supply the Social Security Administration (SSA) with various documents and an estimate of his 1991 self-employment income. (Rec. 85–86). Plaintiff responded that his 1991 income would be "exactly $9720 in wages. I have given my entire outfit, practice, building, etc. to another licensed health care professional who will own and manage all and pay me wages . . ." (Rec. 92). Based upon this information, and the data received from the plaintiff's accountant, SSA sent plaintiff a revised application and requested documentation of the business transfer. (Rec. 97–99). Plaintiff responded to the SSA and enclosed a copy of the "Property Transfer and Contract." (Rec. 100–101).

On May 7, 1991, plaintiff filed his revised application for retirement insurance benefits in which he stated that he expected to earn $9720 that year. (Rec. 102–104). Prior to rendering an initial decision, SSA advised plaintiff that if he wished a decision to be made at that time, Social Security regulations would prevent the allowance of any payment of monthly benefits, apparently because of the contractual agreement between he and his wife. (Rec. 105). He was referred to an Eleventh Circuit case, *Martin v. Sullivan,* 894 F.2d 1520 (11th Cir.1990), which SSA maintained had many similarities to his claim.

Plaintiff was further advised of an optional course of action which might have resulted in the authorization of payments during 1991. (Rec. 105–106). In order to make a determination concerning this alternative, however, the SSA needed a copy of plaintiff's 1988 partnership tax return which had been requested of plaintiff's accountant. (Rec. 106). Plaintiff was advised that if he did not respond within 21 days, a final decision would be made based on the current evidence in the file. (Rec. 106). That return was not submitted, and on June 10, 1991, an initial determination was issued denying plaintiff's claim for insurance benefits. (Rec. 109–110). That decision was affirmed upon reconsideration. (Rec. 121).

Plaintiff then requested an administrative hearing, which was held on October 18, 1991, by an administrative law judge (ALJ) who considered the matter *de novo.* At that hearing, plaintiff waived his right to counsel (Rec. 30), and both he and his wife testified. Plaintiff testified that following the purported transfer he continued to practice general dentistry as he did before the transfer, he continued to see the same number of patients per week, and both he and his wife estimated that their income from the dental practice would be the same following the transfer.

In a decision dated November 15, 1991, the ALJ concluded that the plaintiff was not eligible for retirement insurance benefits. (Rec. 20). In reaching this conclusion, he found that after March 4, 1991, plaintiff "continued to perform general dental services to approximately fifty patients per week, which services have been substantial and valuable." (Rec. 19). Furthermore, he determined that "[f]or Social Security purposes, the purported conveyance was not a bona fide transfer

to the claimant's wife; it was a scheme to permit the claimant to continue to practice dentistry, while diverting the bulk of his income to his wife, so that he would become eligible to receive retirement insurance benefits." (Rec. 19). The ALJ, therefore, found that the plaintiff was "not 'retired' within the meaning of the Act." (Rec. 19).

In a decision dated July 17, 1992, the Appeals Council denied plaintiff's request for review. (Rec. 4–5). Consequently, the ALJ's decision is the final decision of the Secretary, and, therefore, that is the only decision that is before this court for review.

## II. DISCUSSION

### A. Standard of Review

In reviewing the Secretary's final decision, it is not the court's function to consider the case *de novo*, but, assuming the Secretary has applied the correct legal standards, which is the case here, the court must merely decide whether the decision is supported by "substantial evidence." 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Alexandrou v. Sullivan*, 764 F.Supp. 916, 917 (S.D.N.Y.1991). "The substantial evidence test applies not only to findings of basic evidentiary facts, but also to inference and conclusions drawn from such facts." *Alexandrou*, 764 F.Supp. at 917–18 (*citing Levine v. Gardner*, 360 F.2d 727, 730 (2d Cir.1966)).

### B. Substantial Evidence Supports the Secretary's Decision

■ After careful review of the administrative record, briefs filed by both parties, and the Report–Recommendation of the magistrate judge, this court finds that the Secretary's final decision is clearly supported by substantial evidence.

It is well established that the Secretary has the authority and the obligation to exam-ine substance over form, determine the bona fides of family business transactions, and pierce a fictitious family financial arrangement created only to make a claimant eligible for retirement insurance benefits. *Martin v. Sullivan*, 894 F.2d 1520, 1532–33 (11th Cir. 1990); *Gardner v. Hall*, 366 F.2d 132, 135 (10th Cir.1966); *Dondero v. Celebrezze*, 312 F.2d 677, 678 (2d Cir.1963); *Newman v. Celebrezze*, 310 F.2d 780, 781 (2d Cir.1962); *Poss v. Ribicoff*, 289 F.2d 10, 11 (2d Cir. 1961); *Toner v. Schweiker*, 537 F.Supp. 846, 854 (W.D.N.Y.1982). It is clear in the instant case that the contractual arrangement between the plaintiff and his wife was merely a subterfuge for plaintiff to become eligible for retirement benefits.

The ALJ properly determined that plaintiff's dental services "are both substantial and valuable." (Rec. 18). It is clear that the contractual provision limiting his compensation to only $9720 bore no relationship whatsoever to the true value of his services. As correctly noted by the ALJ, according to plaintiff's 1990 Federal Income Tax return, he grossed $200,203 in his practice, netting a total of $62,052. Plaintiff testified that his gross income for 1991 would probably be the same. (Rec. 47, 55).

The ALJ further found that while plaintiff's wife performs additional duties in the office [3], "her increased duties are not in any way commensurate with the increased remuneration she stands to receive under the [property transfer agreement]." (Rec. 18). The ALJ also noted that the income of plaintiff's wife is commingled with plaintiff's, and "the income to the family unit, before and after the [contract] remains the same—it all goes into the same pot. The [contract] does not effect any actual change in the claimant's finances." (Rec. 18).

The Secretary's finding that plaintiff was not retired is also supported by the purported transfer of plaintiff's dental practice to his wife. The contract was written the day before plaintiff's sixty-fifth birthday and limited his wages to precisely $9720, which conveniently coincides with the maximum amount he could have earned in 1991 without a reduction in the amount of retirement benefits. In addition, when asked if "the purpose of

---

**3.** According to the plaintiff, his wife now orders supplies, handles financial matters, and hires and fires the personnel in the small, one-dentist practice. (Rec. 52–55).

this document was to enable [him] to be entitled to retirement insurance benefits …,'" he responded, "[c]ertainly that was a consideration …" (Rec. 61).

In sum, this court finds that the ALJ's decision is adequately supported by substantial evidence and thus must be affirmed.

## C. Plaintiff's Objections

■ Plaintiff makes extensive objections to the magistrate judge's Report–Recommendation. He argues first that the SSA erroneously considered he and his wife to be doing business together. He claims that by longstanding custom, practice and usage, the SSA treats spouses as autonomous parties and that he and his wife should therefore be considered as "doing business at arm's length, independently and autonomously." (Plaintiff's Objections to Report–Recommendation 1). As evidence of this proposition, plaintiff notes that at one stage of the application process a representative of the Ogdensburg Social Security office refused to accept· plaintiff's passport as evidence of his date of birth. Upon plaintiff's request, that decision was immediately reviewed by the Operations Supervisor, who happened to be the representative's husband. This, plaintiff claims is proof of the SSA's longstanding practice of treating spouses autonomously in the transaction of business.

The weight of precedent decisively defeats this argument. Whatever the Ogdensburg Social Security Office's hiring policies, the SSA has the authority and duty to pierce fictitious family arrangements designed to circumvent the earnings test and impede the proper administration of the retirement insurance benefits program. *Martin v. Sullivan,* 894 F.2d 1520, 1532–33 (11th Cir.1990); *Gardner v. Hall,* 366 F.2d 132, 135 (10th Cir.1966); *Dondero v. Celebrezze,* 312 F.2d 677, 678 (2d Cir.1963); *Newman v. Celebrezze,* 310 F.2d 780, 781 (2d Cir.1962); *Toner v. Schweiker,* 537 F.Supp. 846, 854 (W.D.N.Y.1982). The double standard of which plaintiff complains here is a facade. Plaintiff's excitement over the hiring policy

of the Ogdensburg Social Security office does not change the fact that he has attempted to deceive the SSA as to his actual earnings.

■ Plaintiff further claims that the denial of his retirement benefits acts "to punish a senior citizen because he sold or gave away his property." (Objections 3). He alleges that the Secretary's decision violates his rights under the Fifth Amendment because it "in effect, deprives him of his property." *Id.* Although plaintiff does not specify whether this alleged "taking" violates his rights under the Due Process Clause of the Fifth Amendment or the Takings Clause, both claims fail.

· To state a claim under either the Due Process Clause or the Takings Clause, a plaintiff must allege facts showing that the state or federal action deprives him of a protected property interest. *Story v. Green,* 978 F.2d 60, 62 (2d Cir.1992) (*citing Board of Regents v. Roth,* 408 U.S. 564, 576–79, 92 S.Ct. 2701, 2708–10, 33 L.Ed.2d 548 (1972) (due process claim)); *West Farms Assoc. v. State Traffic Comm'n,* 951 F.2d 469, 472 (2d Cir.1991) (due process claim); *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1000–04, 104 S.Ct. 2862, 2871–74, 81 L.Ed.2d 815 (1984) (takings claim). To have a property interest in a public benefit, a plaintiff must have "more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Story v. Green,* 978 F.2d at 62 (*quoting Board of Regents v. Roth,* 408 U.S. at 577, 92 S.Ct. at 2709). Property interests are created and defined by "existing rules or understandings that stem from an independent source [of law]," defining eligibility for them. *Story v. Green,* 978 F.2d at 62 (*quoting Board of Regents v. Roth,* 408 U.S. at 507, 92 S.Ct. at 2709).

In the instant case, the independent source of law which creates plaintiff's alleged property interest is the Social Security Act. The act, together with the existing rules and procedures for its execution, define one's eligibility for the benefits at issue. There must be more than a presumption that one is eligible for full benefits or a unilateral expectation of such an interest. Instead, there must be

some legitimate entitlement to the full benefits that vests in plaintiff, namely, plaintiff must be "eligible" for full benefits within the meaning of the Act and as defined by the SSA. 42 U.S.C. § 402(a), § 403(a). SSA properly determined that plaintiff's alleged retirement was fraudulent and that he was therefore ineligible for the benefits because he was not "retired" within the meaning of the act. 42 U.S.C. § 403(a); *Martin v. Sullivan,* 894 F.2d 1520 (11th Cir.1990); *Holden v. Califano,* 641 F.2d 405 (6th Cir.1981). Accordingly, because plaintiff is not eligible for full benefits, he does not have a legitimate claim of entitlement. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709).

■ Even working on the assumption that plaintiff does have a legitimate entitlement to the benefits, this court finds that both the due process clause and the takings clause are satisfied here. Under the due process analysis, as set forth in *Mathews v. Eldridge,* the court must assess the nature of the private interest, the nature of the governmental interest, and the risk of an erroneous deprivation of a legitimate interest in order to decide whether a person has received adequate process. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). The nature of the private interest here is the expectancy of a government benefit, which is afforded some protection. *See Mathews,* 424 U.S. at 340–42, 96 S.Ct. at 905–6; *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Richardson v. Belcher,* 404 U.S. 78, 81, 92 S.Ct. 254, 257, 30 L.Ed.2d 231 (1971). The nature of the government's interest in assuring that retirement benefits go only to those who are eligible, those who are truly "retired", however, is a more compelling interest which is therefore afforded greater protection. Finally, there is very little risk of erroneous deprivation here. Upon review of plaintiff's application the SSA made a formal decision that he was ineligible for full benefits. That decision was reconsidered, affirmed, and finally, the entire process was reviewed and plaintiff was allowed to testify at an administrative hearing. Under *Mathews v. Eldridge,* it is clear that the

process which plaintiff received was more than adequate.

■ Under a takings analysis, the reduction of benefits by the Social Security Administration does not rise to the level of compensable "property" protected by the takings clause. Social security benefits are not considered accrued property rights. *Watts v. Veneman,* 476 F.2d 529 (D.C.Cir.1973). "Social security benefits are not contractual and may be altered or eliminated at any time." *United States R.R. Retirement Bd. v. Fritz,* 449 U.S. 166, 174, 101 S.Ct. 453, 459, 66 L.Ed.2d 368 (1980). The Supreme Court has repeatedly refused to find a taking where Congress has altered, amended or limited public benefits such as social security. *Id.; Hoffman v. City of Warwick,* 909 F.2d 608, 617 (1st Cir.1990); *Zucker v. U.S.,* 758 F.2d 637, 640 (Fed.Cir.) *cert. denied* 474 U.S. 842, 106 S.Ct. 129, 88 L.Ed.2d 105 (1985). In the instant case, the denial of full benefits which allegedly eliminated plaintiff's entitlement came from the SSA which directly implements the benefit program established by Congress. There is no compensable property interest which has been "taken" when Congress, through the Social Security Act 42 U.S.C. § 403(a)(1), reduces a claimant's benefits. *United States R.R. Retirement Bd. v. Fritz,* 449 U.S. 166, 174, 101 S.Ct. 453, 459, 66 L.Ed.2d 368 (1980).

■ Plaintiff also contends that the record is incomplete and inaccurate because it does not contain a copy of a letter dated August 28, 1991, from Assistant United States Attorney (AUSA) Edward R. Broton to the Office of the Inspector General of the Department of Health and Human Services. In that letter, AUSA Broton merely refers to a copy of correspondence he received from plaintiff, alleging impropriety on the part of an SSA employee, to the SSA.[4] Plaintiff further avers that based upon this letter, the U.S. Attorney had represented him in the past, and therefore his present representation of the defendant "constitutes a criminal breach of the lawyer-client relationship." (Letter from Plaintiff to court dated Feb. 13, 1993).

---

**4.** The alleged impropriety concerns the post-dating documentation procedure discussed *supra.*

First, plaintiff has misconstrued both the actions of AUSA and the legal significance of the letter which is "missing" from the record. The U.S. Attorney's office is precluded from representing a private citizen against the government. (Rep.–Rec. p. 11; Letter of AUSA William H. Pease to the court dated Feb. 18, 1993). Secondly, this letter merely referred plaintiff's letter elsewhere. Such a letter is far from that which is needed to establish an attorney-client relationship. Thirdly, this letter's absence from the record is not the enigma of which plaintiff complains. Section 205(g) of the Act merely requires that "[a]s part of his answer the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based." 42 U.S.C. § 405(g). Clearly, the omitted item is not part of the transcript, nor is it evidence upon which the Secretary's determination was based. This document has no relevance to this action.

Plaintiff also complains of the post-dating procedure used by the SSA in the dating of certain documents. In particular, plaintiff complains that the SSA's decision on reconsideration was dated August 5, 1991, and was received by plaintiff on that same date, meaning that the SSA had post-dated the notice. Plaintiff claims that this "criminal act" was done "knowingly, willfully and with stealth." (Objections 6). The SSA has explained that it often post-dates decisions three days to account for mailing and handling time. The post-dating of the decision allows claimants more time to file an appeal because the time limitation on filing begins to run on the date that the claimant receives the notice on reconsideration, rather than the date that the decision was actually made. Thus, post-dating the decision is a reasonable procedure, and does not constitute any dishonesty on the part of the SSA.

Moreover, the post-dating of plaintiff's notice on reconsideration is irrelevant and immaterial. The plaintiff has not been injured by the SSA's action, in fact, he was benefitted by it. Plaintiff's complaint of this post-dating procedure is yet another empty criticism of the SSA. Plaintiff is clearly irate that he has been denied benefits to which he believes he is entitled. This court agrees with the magistrate judge that by protesting every facet of the process which he has received, from the determination that he had not actually retired and was therefore ineligible for benefits, to the magistrate judge's report-recommendation, plaintiff has "wasted a tremendous amount of valuable governmental resources". (Rep.–Rec. 10).

Plaintiff raises numerous other issues which the magistrate judge found to be "so patently frivolous that they need not be addressed." (Rep.–Rec. 12). This court agrees. The remaining claims are completely irrelevant to the real issue at hand: which is whether the Secretary's decision is supported by substantial evidence.

### III. CONCLUSION

Based upon Magistrate Judge Smith's Report–Recommendation and because the Secretary's decision is supported by substantial evidence, it is hereby **ORDERED** that the complaint be dismissed.

