34 F.3d 1077
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 James WILSON, Plaintiff-Appellant,
v.
DEPARTMENT OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 93-6395.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 23, 1994.
 
 1
 Before MOORE and KELLY, Circuit Judges, and BABCOCK,** District Judge.
 
 ORDER AND JUDGMENT[1]
 
 2
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 3
 Plaintiff James Wilson appeals from a judgment affirming a decision of the Secretary of Health and Human Services imposing deductions against his 1989 retirement insurance benefits after finding he was not retired within the meaning of the Social Security Act. Plaintiff contends the Secretary applied an erroneous legal standard and her findings are not supported by substantial evidence. We reverse and remand.
 
 
 4
 Plaintiff was born on December 10, 1923. He applied for retirement insurance benefits in November 1988. He estimated that his 1988 earnings were $45,000, and his 1989 earnings would be $8,400. Plaintiff was president and principal stockholder of Stallion Trailer Kits, Inc., at the time of his application. Stallion manufactures horse trailers.
 
 
 5
 Plaintiff reported $8,399.76 in wages from Stallion in 1989. He received retirement benefits throughout that year. However, on October 22, 1990, the Social Security Administration informed him that an overpayment of benefits had occurred, based on its determination that he rendered the same amount of services to Stallion at the same hourly rate in 1989 as in 1988.
 
 
 6
 Following the denial of plaintiff's request for reconsideration, a hearing was held before an administrative law judge (ALJ). Plaintiff presented evidence that as of January 1989, he reduced the hours he worked to no more than half of what he had previously worked. He also changed the kind of work he did. Before January 1989, he was responsible for the day-to-day operations of the business and made all of the important decisions. He placed orders, was available for telephone contacts, did book work, paid taxes, and generally kept up with the everyday work load.
 
 
 7
 Plaintiff's wife, son, and stepson assumed his duties in operating the business as of January 1989. He no longer dealt with customers or suppliers, and was not involved with production problems or making improvements to the company's products. He gave up making deliveries of parts to customers, handling money, and paying bills. His new duties were vacuuming, cleaning rest rooms, changing oil, mowing the grass, and occasionally making deliveries or picking things up. He told suppliers who called him that he was no longer managing the business, and referred them to his stepson. The only advice he gave to those persons running the company was whether to extend credit to customers with whom he was acquainted. He continued to own all the stock in the corporation in 1989, and felt that entitled him to give advice on major decisions if any arose.[2] However, none arose in 1989. He signed the majority of corporate checks in 1987, decreased the number he signed in 1988, and only signed about three or four a month in 1989 for small, routine purchases. Plaintiff set his own wage at $6 an hour, which was about the same as the wage paid to an employee who was later hired to perform the tasks plaintiff had been performing.
 
 
 8
 Also submitted in evidence was the statement of plaintiff's stepson, Steve McCauley. McCauley stated that in January 1989, he assumed plaintiff's managerial responsibilities. He began ordering materials, dealing with customers, making hiring and firing decisions, and granting pay raises and bonuses. The record does not indicate how much his salary increased as a result of his additional duties.
 
 
 9
 Two of Stallion's suppliers stated that before January 1989, they dealt with plaintiff. After that date, they dealt with McCauley.
 
 
 10
 Plaintiff's wife, Marilyn Wilson, stated that as of January 1989, in addition to secretarial work, her duties included managing the office, talking to customers and suppliers about the product, changing to new procedures which would benefit the business, and knowing the overall workings of the business. Plaintiff also noted that his wife took over receiving money and paying bills, and that she made some management decisions. Her wages increased from $12,965.53 in 1988 to $48,774.22 in 1989, as reported on her W-2 forms.
 
 
 11
 Corporate tax returns indicate that plaintiff's son, James, who was vice-president, earned $23,860 in 1988 and $29,499 in 1989. The record does not indicate how his duties increased, however.
 
 
 12
 The ALJ found that while plaintiff's hours decreased after his retirement, his duties remained the same. The true value of plaintiff's services for 1989 was $24,752.88, the ALJ found, which represented half of his 1988 wages, as reported on his W-2 form. His wife's new duties were not commensurate with the sudden increase in her salary, which would have been used by or for plaintiff's support. The ALJ concluded that plaintiff was not retired within the meaning of the Act. Consequently, he concluded, deductions should be imposed against the retirement benefits he received in 1989. The Appeals Council interpreted the ALJ's decision to mean that Mrs. Wilson's 1989 earnings were inflated by $16,353.12 to disguise earnings actually attributable to plaintiff's services, and denied plaintiff's request for review. The district court affirmed.
 
 
 13
 The Secretary is authorized to impose deductions from retirement benefits received when a claimant has earnings exceeding a specified exempt amount. 42 U.S.C. 403(b). In 1989, that amount was $8,880. 42 U.S.C. 403(f)(3), (8); 20C.F.R. 404.430(a), (b), (d)(xii). Both wages and self-employment income are considered earnings. 20 C.F.R. 404.429(a). The burden of proof lies with the claimant to show he or she did not have earnings exceeding the exempt amount. 42 U.S.C. 403(f)(4).
 
 
 14
 The Secretary's findings of fact are conclusive if they are supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Such deferential review does not apply to questions of law, however. Byron v. Heckler, 742 F.2d 1232, 1235 (10th Cir.1984).
 
 
 15
 We agree with plaintiff that because he is an officer of a corporation, he is a wage-earning employee rather than a self-employed person. 42 U.S.C. 410(j); 20 C.F.R. 404.1006; Martin v. Sullivan, 894 F.2d 1520, 1531 (11th Cir.1990); Pointer v. Shalala, 841 F.Supp. 201, 204 (N.D.Tex.1993); Soc. Sec. Rul. 82-16. That conclusion does not mandate reversal, however.
 
 
 16
 While plaintiff's 1989 W-2 shows that he earned $8,399.76, the Secretary is authorized "to pierce any fictitious arrangements among family members ... to shift salary payments from one to the other when the arrangement is not in accord with reality." Gardner v. Hall, 366 F.2d 132, 135 (10th Cir.1966). The factors we considered in Hall were whether 1) there was a shifting of payments from the claimant to his wife for services actually rendered by the claimant, 2) the increased salary paid to the claimant's wife was excessive or not earned by her, and 3) the wife's salary was used to support the claimant. Id.; see also Heer v. Secretary of Health & Human Servs., 670 F.2d 653, 655 (6th Cir.1982); Bryan v. Mathews, 427 F.Supp. 1263, 1268-69 (D.D.C.1977). All three of these factors must be present to reallocate income on the basis of a fictitious salary arrangement. Id. at 1269 n. 15; see also Hall, 366 F.2d at 135 (holding fact wife deposited salary in joint bank account, alone, did not justify reallocation of salary to claimant-husband). The facts must be clearly developed in the record to support the Secretary's reallocation of salary. Id.
 
 
 17
 Although the Secretary did not make an explicit finding that a fictitious family salary arrangement existed, it is evident from the findings she did make that she undertook this analysis. Plaintiff challenges these findings.
 
 
 18
 It was undisputed that as of January 1989, plaintiff ceased his former responsibilities of dealing with customers and suppliers, getting involved with production problems, correcting problems with or making improvements to the product, delivering parts, and handling money. He referred all customer or supplier contacts to his stepson. His new duties were cleaning up and servicing vehicles. The only evidence as to the value of these duties was that a man the company later hired was paid $5.50 an hour to perform the same duties. The advice plaintiff gave those running the corporation was limited to whether customers with whom he was acquainted should be extended credit. Plaintiff's wife, son, and stepson assumed his former managerial duties.
 
 
 19
 In finding that the value of plaintiff's services to the company had not changed since 1988, the Secretary appears to have ignored the uncontroverted evidence and instead relied heavily on plaintiff's status as corporate president and sole stockholder to assume he continued to perform his previous duties. However, in Soc. Sec. Rul. 82-16, the Secretary examined the actual duties of a claimant, rather than the fact he remained corporate president and owner of ninety-three percent of its stock, to determine whether those duties were commensurate with his monthly wage. By following her own ruling, as required by 20 C.F.R. 422.406(b)(1), the Secretary could not have found that plaintiff's post-January 1989 duties had the same value as his pre-January 1989 duties. Thus, the Secretary erred in reallocating $16,353.12 of Mrs. Wilson's salary to plaintiff.
 
 
 20
 The judgment of the United States District Court for the Western District of Oklahoma is REVERSED, and the cause is REMANDED with directions to reverse the Secretary's decision.
 
 
 
 **
 Honorable Lewis T. Babcock, District Judge, United States District Court for the District of Colorado, sitting by designation
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 In July 1991, he gave twenty-eight shares of stock to each of his two sons, and 222 shares to his wife. He continued to own the remaining 222 shares